Widener Michael WEEMS, Appellant,

· **v.**

The STATE of Texas, Appellee.

No. 14–03–01067–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 3, 2005.

Rehearing Overruled July 14, 2005.

Perry R. Stevens, Angleton, for appellant.

Keith G. Allen, Angleton, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

Following the trial court's denial of his motion to suppress, appellant Widener Michael Weems was convicted by a jury of murder and assessed punishment at life in the Texas Department of Criminal Justice, Institutional Division. He appeals his conviction on a single issue. He contends the trial court erred by denying his motion to suppress and admitting his written and videotaped statements and any evidence discovered through those statements because the State failed to prove the police had probable cause to arrest him, and thus, his in-custody statements were the fruit of an unlawful arrest. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2004, H.P. Weems reported his father, Holmes Weems, missing. Shortly thereafter, investigators discovered Holmes Weems' vandalized and abandoned vehicle in a field. H.P. Weems gave investigators information that if anything bad had happened to his father, it would be at the hands of the Weems brothers, specifically appellant.[1] Thereafter, investigators questioned appellant's wife, Emily Weems. Mrs. Weems told investigators appellant and his brother were responsible for murdering her father. After receiving her statement, an investigator allegedly drew up a probable cause affidavit and obtained a warrant for appellant's arrest.

Thereafter, appellant was arrested and brought to the Brazoria County Sheriff's Department. That night, after he received and waived his *Miranda* rights, appellant made a written confession and directed officers to the location of Holmes Weems' body. The next morning, appellant accompanied officers to the exact location of the body, and, upon his return to the Sheriff's office, gave a videotaped statement about his involvement in the murder.

Before trial on the instant case, appellant filed a motion to suppress the written and videotaped statements he made following his arrest. The trial court conducted a pre-trial hearing on appellant's motion, made findings of fact and conclusions of law, and denied the request. In his sole appellate issue, appellant contends the trial court erred by denying his motion to suppress his incriminating statements because, he claims, the State failed to prove the police had probable cause to arrest him, and thus, his in-custody statements were the fruit of an unlawful arrest.

## II. MOTION TO SUPPRESS

### A. Standard of Review

We review the trial court's ruling on a motion to suppress evidence under an abuse-of-discretion standard. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). If supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Hill v. State*, 902 S.W.2d 57, 59 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). At a suppression hearing, the trial judge is the sole finder of facts. *Arnold v. State*, 873 S.W.2d 27, 34 (Tex.Crim.App.1993); *Hill*, 902 S.W.2d at

---

1. Appellant is the son-in-law of the victim and, coincidentally, shares the same surname with the victim and his family.

59. The trial judge is free to believe or disbelieve any or all of the evidence presented. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). We give almost total deference to the trial court's determination of historical facts that the record supports, especially when the trial court's findings turn on evaluating a witness's credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We give the same amount of deference to the trial court's ruling on mixed questions of law and fact if the question is resolved by evaluating credibility and demeanor. *Ross*, 32 S.W.3d at 856.

 We consider *de novo* issues that are purely questions of law, such as whether probable cause existed. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002); *Guzman*, 955 S.W.2d at 89. Furthermore, if the trial court's ruling is reasonably supported by the record and is correct on any theory of law applicable to the case, the reviewing court will sustain it upon review. *Villarreal*, 935 S.W.2d at 138. This is true even if the decision is correct for reasons different from those espoused at the hearing. *Id.* at 138–39.

**B. Preservation of Error**

 The State argues that appellant's grounds on appeal do not comport with his objection at trial, and further, that his objection was not specific enough to raise the issue of probable cause.[2] We disagree. Pursuant to Rule 33.1, appellate review is waived unless the record shows appellant timely complained to the trial court stating the grounds for the ruling sought with sufficient specificity, unless the grounds were apparent from the context, and ob-

tained a ruling on the complaint. TEX. R.APP. P. 33.1; *see Daniels v. State*, 25 S.W.3d 893, 897 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Appellant's written motion to suppress states "the arrest was illegal, in that officers had no lawful warrant for the Defendant's arrest, nor had authority to arrest without a warrant, when the Defendant was taken into custody." Defense counsel objected numerous times during the course of the suppression hearing, arguing appellant was not lawfully under arrest, not lawfully in custody, was illegally detained and arrested, and the arrest was warrantless with no authority to arrest without a warrant. These objections were sufficiently specific under Rule 33.1. Therefore, appellant did not waive the issue and we may review it on appeal.

**C. Warrants and Probable Cause to Arrest**

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. Amend. IV. The affidavit supporting an arrest warrant is called a complaint. TEX.CODE CRIM. PROC. ANN. art. 15.04 (Vernon 1977). A complaint in support of an arrest warrant must: (1) state the name of the accused, if known, and if not known, must give some reasonably definite description of him; (2) show that the accused has committed some offense against the laws of the State, either direct-

---

2. The State contends it never developed testimony regarding the adequacy of probable cause because of appellant's purported lack of specificity in his objections.

ly or that the affiant has good reason to believe, and does believe, that the accused has committed such offense; (3) state the time and place of the commission of the offense, as definitely as can be done by the affiant; and (4) be signed by the affiant. TEX.CODE CRIM. PROC. ANN. art. 15.05 (Vernon 1977).

 Affidavits filed for issuance of arrest warrants must provide the magistrate with sufficient information to support an independent judgment that probable cause exists for the warrant. *McFarland v. State,* 928 S.W.2d 482, 509 (Tex.Crim. App.1996). In determining the sufficiency of an affidavit supporting an arrest warrant, a reviewing court is limited to the "four corners" of the affidavit. *Id.* at 510. If the State intends to justify an arrest on the basis of a warrant, it is incumbent on the State to produce the warrant and its supporting affidavit for inspection by the trial court. *Etheridge v. State,* 903 S.W.2d 1, 19 (Tex.Crim.App.1994). "This requirement is imposed so that the trial court may inspect the documents and determine whether probable cause existed and ensure that the arrestee's rights have been fully protected." *Id.* (quoting *Garrett v. State,* 791 S.W.2d 137, 140 (Tex.Crim.App.1990)).

### D. Failure to Produce the Warrant

 If a warrant was required to make a valid arrest, the State's failure to produce the warrant at the suppression hearing does not mandate suppression of the written statement. *Dorsey v. State,* 964 S.W.2d 701, 703 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). In some instances, the State is excused from producing both the warrant and probable cause affidavit at the suppression hearing if the State introduces sufficient evidence or testimony to permit the trial court to determine the existence of probable cause to effect the arrest. In *Garrett v. State,*

even though no supporting affidavit or other documentation was introduced demonstrating a reasonable belief that appellant violated a condition of parole, the warrant was nevertheless valid. 791 S.W.2d at 141. The warrant was valid because during the suppression hearing, a parole case worker testified regarding appellant's failure to comply with a parole condition, providing the trial court and defense counsel the opportunity to determine whether the warrant was supported by a reasonable belief. *Id.*

In *Etheridge v. State,* a formal complaint in affidavit form was filed with a justice of the peace. 903 S.W.2d at 18. In the complaint, the surviving victim of the offense named the defendant as the attacker of her and the deceased, and identified defendant's photograph. *Id.* The justice determined probable cause existed for defendant's arrest, and issued an arrest warrant for defendant. *Id.* The complaint made it into the record, but the arrest warrant did not. *Id.* The magistrate testified at the suppression hearing that he did, in fact, issue an arrest warrant based upon the affidavit, which he concluded established probable cause for the defendant's arrest. *Id.* at 19. The defendant had the opportunity to cross-examine the magistrate as to the validity of the arrest warrant, but instead chose to inquire about other matters. *Id.* No testimony contradicted the existence of the arrest warrant. *Id.* The *Etheridge* court held that although the State did not produce the actual arrest warrant, the trial court had an adequate opportunity to determine whether probable cause existed for defendant's arrest. *Id.*

In *Myles v. State,* neither the warrants nor the supporting affidavits were produced at the suppression hearing. 946 S.W.2d 630, 635 (Tex.App.-Houston [14th Dist.] 1997, no pet.). In lieu of the origi-

nals, the State produced reconstructed documents on standardized forms. *Id.* The magistrate testified she issued three arrest warrants on the basis of probable cause affidavits filed by a DPS trooper who had ticketed appellant for three traffic offenses. *Id.* The officer who issued the original traffic tickets testified that he recalled completing and filing probable cause affidavits with the magistrate because of appellant's unusual middle name. *Id.* at 635–36. This court held the State met its burden to prove the existence and validity of the arrest warrants. *Id.* at 636.

In *Torres v. State,* the defendant complained on appeal the trial court erred in denying his motion to suppress evidence seized in connection with his arrest because the State failed to present either the warrant or the probable cause affidavit at the suppression hearing. 933 S.W.2d 339, 339 (Tex.App.-Houston [14th Dist.] 1996, no pet.). Instead, the State offered testimony and presented the motion to adjudicate upon which the arrest was based. *Id.* at 340. The witnesses who testified as to the existence of, and basis for, the arrest warrant included the arresting officers who testified they verified the existence of a felony warrant prior to the appellant's arrest, the custodian of records at the Sheriff Department's warrant division, the district court clerk regarding the motion to adjudicate and capias issued prior to the appellant's arrest, and the court liaison for the probation office who filed the motion to adjudicate. *See id.* This court held the trial court was given the opportunity to determine whether the capias was supported by probable cause and the appellant's rights were protected. *Id.* at 341.

The common thread woven through all of these cases is compliance with the rule in *Miller:* when the State seeks to justify an arrest on the basis of an arrest warrant issued by a magistrate, the warrant and affidavit must be produced. *Miller v. State,* 736 S.W.2d 643, 648 (Tex.Crim.App. 1987). This requirement is imposed so that the trial court may inspect the documents and determine whether probable cause existed and ensure that the arrestee's rights have been fully protected. *Garrett,* 791 S.W.2d at 140. When the State fails to introduce the warrant and supporting affidavit, there nevertheless must be sufficient evidence introduced at the suppression hearing to provide the trial court with an adequate opportunity to determine whether probable cause existed for the accused's arrest. We have seen in *Garrett, Etheridge, Myles,* and *Torres* that this may be accomplished in a variety of ways.

 Here, however, absolutely no evidence was produced at the suppression hearing which would permit the trial court to determine the existence of probable cause to arrest Weems. The meager evidence consisted almost entirely of hearsay and double hearsay that a warrant and affidavit even existed, without any testimony as to the contents of the probable cause affidavit.

In this case, the State did not present an arrest warrant or affidavit stating probable cause to the trial court. Instead, the State presented testimony of three investigators from the Brazoria County Sheriff's Department.[3] Investigator Buck Henson testified that H.P. Weems, II, the victim's son, reported his father missing. H.P. believed that if anything bad happened to his father, it would be at the hands of the Weems brothers, specifically, the appellant. Thereafter, Henson questioned Emily Weems, wife of appellant and daughter

---

3. One of the investigator's testimony concerned only the details concerning a video-taped statement and is not relevant to the issue on appeal.

of the victim. Mrs. Weems told investigators appellant and his brother were responsible for murdering her father. According to Henson, after receiving Mrs. Weems's statement and finding the victim's abandoned vehicle, Investigator Kinchloe wrote the probable cause affidavit for the arrest on either kidnaping or aggravated assault. Henson was not aware of the magistrate's name or exact time the warrant was issued, but said it was issued before appellant's arrest. Detective Richard Foreman, like Henson, testified Kinchloe wrote the probable cause affidavit but he did not know who signed the warrant. He testified further that Kinchloe told him he had "good warrants." Appellant testified the police arrested him for aggravated kidnaping and never showed him a warrant.

Following the suppression hearing, the trial judge made written findings of fact and conclusions of law. The trial judge's conclusions of law provide that an arrest warrant based on probable cause was issued for the arrest of appellant for the offense of murder. The trial judge's findings of fact include in relevant part:

1. Investigator Henson spoke with several people during the course of his investigation, including family members of the deceased.

2. Based on Henson's interviews, the investigation was narrowed to three individuals. The three individuals were Emily Weems, appellant, and appellant's brother.

3. Investigators spoke with Emily Weems at the Brazoria County Sheriff's Office. Emily Weems told the investigators appellant and his brother were responsible for the murder.

4. Based on the information received from Emily Weems, Investigators Henson and Kincheloe requested and obtained a warrant for appellant's arrest. Thereafter, appellant was arrested.

 A valid arrest warrant must be accompanied by an affidavit with enough factual information to support probable cause, and reflect the approval of a detached and neutral magistrate. In this case, the record contains no warrant, no affidavit, no evidence of the factual information within the affidavit, and no evidence a warrant was actually issued by a detached and neutral magistrate. The State failed to call the investigator who allegedly wrote the affidavit or the magistrate who allegedly issued the warrant. Instead, the state called two officers. Both officers testified to the existence of a warrant and a supporting affidavit written by another officer. However, neither officer had ever seen the warrant or the affidavit, and neither officer knew who had allegedly issued the warrant. We hold the record does not support the trial court's conclusion there was a valid arrest warrant based on probable cause.[4] The trial court's finding a warrant existed was error. Therefore, appellant was illegally under arrest when he made the written and videotaped statements. The question remains whether the resulting taint infecting the evidence in question was attenuated, thereby making the evidence admissible notwithstanding the illegal arrest. *See Jones v. State*, 833 S.W.2d 118, 124 (Tex.

---

4. Even if probable cause to arrest appellant existed, the arrest was still unlawful because it was not authorized by articles 14.01–.04 of the Texas Code of Criminal Procedure. Warrantless arrests in Texas are authorized by statute and only permitted in limited circumstances. *See* TEX.CODE CRIM. PROC. ANN. art.

14.03 (Vernon Supp.2004); *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App.1991). The State bears the burden to prove that a warrantless arrest falls within one of those exceptions. *Amores*, 816 S.W.2d at 413. No such showing was made here.

Crim.App.1992) (citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

## E. Attenuation Doctrine

■ The attenuation doctrine provides that evidence may be admitted at trial if the connection between the initial illegality and the means through which the evidence was secured is so attenuated as to dissipate the taint. *See Taylor v. Alabama,* 457 U.S. 687, 690, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). In determining whether the taint infecting the evidence obtained after an illegal arrest is sufficiently attenuated to permit the use of the evidence at trial, the United States Supreme Court has identified the following factors to be considered:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and

(4) the purpose and flagrance of the official misconduct.

*Self v. State,* 709 S.W.2d 662, 666 (Tex. Crim.App.1986) (citing *Brown v. Illinois,* 422 U.S. 590, 604–05, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). This four-part test assures "that the State cannot violate the Fourth Amendment with impunity by washing its hands in the procedural waters of the Fifth Amendment." *Bell v. State,* 724 S.W.2d 780, 787 (Tex.Crim.App.1986).

Appellant gave two confessions while he was illegally detained. Therefore, we will examine each confession separately to determine whether the taint on the evidence was sufficiently attenuated.

## 1. First Statement

### *Miranda Warnings*

■ Repeated warnings alone are not enough to purge the taint of an other-wise illegal arrest. *Bell,* 724 S.W.2d at 788. With respect to the written statement, the trial court's findings of fact and the record reflect that appellant received the *Miranda* warnings at least three times prior to making his written statement. Appellant was advised of his *Miranda* rights when he was taken into custody at his home in Bay City, Texas. Appellant was told of his rights a second time after being transported from the Brazoria County Jail to the Brazoria County Sheriff's Office in Angleton, Texas. Appellant was again read his *Miranda* rights a third time in the confession room. Appellant waived his rights and gave the confession. After the confession was written, appellant was read the *Miranda* warnings from the form another time. After appellant read his confession, he wrote his initials in the space provided, signifying he understood his rights, and signed the confession. This factor clearly favors of the State.

### *Temporal Proximity*

■ Temporal proximity of the arrest and the confession has been described as an "ambiguous" factor and one that is "generally not a strong determining factor per se." *Self,* 709 S.W.2d at 666; *cf. Dunaway v. New York,* 442 U.S. 200, 221, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (Stevens, J., concurring) (stating that even an immediate post-arrest confession may have been motivated by a pre-arrest event). Nevertheless, when the time between the arrest and confession is short and there are no significant intervening circumstances, a court may infer lack of time for reflection. *Bell,* 724 S.W.2d at 788–89 (finding appellant's first confession inadmissable when made within one-and-a-half to three hours of his illegal arrest and without significant intervening circumstances). In this case, appellant was ar-

rested at his home by Investigator Kinchloe sometime between 9:30 p.m. and 10:00 p.m. on January 15, 2003, and brought to the Brazoria County Jail. Investigators Henson and Foreman picked appellant up at the jail and brought him to the Brazoria County Sheriff's Department. The investigators interviewed appellant for approximately fifteen to twenty minutes before taking him into an office to take his statement. Appellant began making his written statement at 11:55 p.m. and finished it at 12:35 a.m. on January 16. From the time appellant was arrested until the time he began making his written statement, approximately two to two-and-a-half hours had elapsed. This second factor tends to favor appellant.[5]

### Intervening Circumstances

An event or circumstance need not actually occur after the arrest, but rather it must manifest itself so as to significantly intervene and thus attenuate the taint of an illegal arrest. *Foster v. State,* 677 S.W.2d 507, 509 (Tex.Crim.App. 1984). Significant intervening circumstances include an appearance before a magistrate,[6] termination of the illegal custody,[7] consultation with counsel,[8] voluntary statement not made in response to police interrogation, consultation with parents,[9] and the procurement of a valid arrest warrant before the confession.[10] *Bell,* 724 S.W.2d at 789 n. 5 & 791; *see also Dunn v. State,* 951 S.W.2d 478, 482 (Tex.Crim.App. 1997) (Mansfield, J., concurring) (finding an intervening circumstance when co-defendant's confession implicated appellant in the murder); *Wicker,* 667 S.W.2d at 141 (finding an intervening circumstance when defendant was allowed to consult with his psychiatrist). In the instant case, there was no such significant intervening circumstance in the State's favor. *See Self,* 709 S.W.2d at 667 (stating that no intervening circumstances in favor of the State appears to fall on appellant's side). However, there was one event that intervened in appellant's favor between his arrest and his first written confession. Appellant was confronted with a small shovel that apparently had been used to dig a grave. *See Farmah,* 883 S.W.2d at 679 (finding that detective's false statement to appellant that complainant identified him was an intervening circumstance in favor of appellant); *Bell,* 724 S.W.2d at 789 (finding that appellant's consent to search, the finding of evidence, and appellant's confrontation with the evidence were intervening circumstances between the arrest and confession

---

5. The Court of Criminal Appeals has suggested this second factor tends to weigh in appellant's favor with similar time frames. *See e.g., Farmah v. State,* 883 S.W.2d 674, 679 (Tex.Crim.App.1994) (approximately four hours); *Maixner v. State,* 753 S.W.2d 151, 156 (Tex.Crim.App.1988) (less than two hours); *Bell,* 724 S.W.2d at 788 (first confession: one-and-a-half to three hours); *Self,* 709 S.W.2d at 666 (approximately two hours); *Ussery v. State,* 651 S.W.2d 767, 771 (Tex.Crim.App. 1983) (one to one-and-a-half hours).

6. *See Hankins v. State,* 132 S.W.3d 380, 390 (Tex.Crim.App.2004); *Jones,* 833 S.W.2d at 125; *Barber v. State,* 737 S.W.2d 824, 832 (Tex.Crim.App.1987).

7. *See Maixner,* 753 S.W.2d at 156 (finding intervening circumstances when appellant had been released from custody and informed he was free to leave, however, he chose to stay because he "wanted to get everything out in the open").

8. *See Wicker v. State,* 667 S.W.2d 137, 141 (Tex.Crim.App.1984).

9. *See Wicker,* 667 S.W.2d at 141.

10. *See Little v. State,* 758 S.W.2d 551, 566 (Tex.Crim.App.1988) (finding intervening circumstances when police made a valid arrest on a formal charge shortly after the illegal arrest and detention, which transformed the arrest into a legal one).

in favor of appellant). Although the sequence of events do not flow directly from the arrest as they do in *Bell*, this third factor falls in appellant's favor.

### Official Misconduct

■ Finally, we must look to the purpose and flagrancy of the official misconduct. "All Fourth Amendment violations are, by constitutional definition, 'unreasonable,' but practical differences between violations should dictate different outcomes. The point at which the taint can be said to have dissipated should be related, in the absence of other controlling circumstances, to the nature of that taint." *Bell*, 724 S.W.2d at 789 (quoting *Brown*, 422 U.S. at 610, 95 S.Ct. 2254 (Powell, J., concurring in part)). The purpose and flagrancy of the police conduct may be the most important factor of the four. *Self*, 709 S.W.2d at 668. The Court of Criminal Appeals has found official misconduct when the arrest: (1) was without probable cause;[11] (2) was calculated to cause surprise, fright, and confusion;[12] and (3) was conducted purely in hope that something would turn up.[13] We find this factor weighs in favor of appellant, although we do not believe the official misconduct was flagrant.

### Summary

■ In summary, the temporal proximity and intervening circumstances factors weigh heavily against admission of appellant's first confession. The repeated *Miranda* warnings do not significantly affect this conclusion. The immediate fruits of appellant's arrest—his first confession— were tainted and should not have been admitted into evidence at trial. We find the State has not met its burden of proof to show the first confession was obtained by means sufficiently distinguishable from the illegal arrest to purge it of the primary taint. *See Bell*, 724 S.W.2d at 789 (finding appellant's first confession inadmissable when made within one-and-a-half to three hours of his illegal arrest and without significant intervening circumstances). The first confession was inadmissable and it was error to deny the motion to suppress appellant's written statement.

### 2. Second Statement

■ We now turn to the admissibility of appellant's second confession, which is a videotaped oral confession. Again, the factors concerning admissibility of evidence following an illegal arrest are: (1) the giving of *Miranda* warnings; (2) the temporal proximity of the arrest and the confession;

---

**11.** *See Farmah*, 883 S.W.2d at 679 (finding the illegality of the arrest weighed heavily in appellant's favor when the officers lacked probable cause to arrest because the only connection between the appellant and the offense was the possession of the car and his race, and noting, this was not a situation with some technical error that invalidated the arrest); *Townsley v. State*, 652 S.W.2d 791, 797–98 (Tex.Crim.App.1983) (finding appellant was initially detained without probable cause, and had probable cause not been established by evidence independent from the illegal detention before appellant confessed, the court would have been forced to look at the full range of police activity occurring between appellant's illegal detention and first written confession).

**12.** *See Duncan v. State*, 639 S.W.2d 314, 316–18 (Tex.Crim.App.1982) (finding flagrant misconduct when appellant was taken from his bed at 3:00 a.m. for interrogation purposes and was interrogated until 6:00 a.m. when she signed the confession); *Green v. State*, 615 S.W.2d 700, 708–09 (Tex.Crim.App.1980) (finding flagrant misconduct when appellant was roused from his sleep in the middle of the night with officers pointing shotguns in his direction, leading him into the freezing weather with no coat, outer clothing, or shoes).

**13.** *See Beasley v. State*, 674 S.W.2d 762, 768–69 (Tex.Crim.App.1982).

(3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Brown,* 422 U.S. at 604–05, 95 S.Ct. 2254.

### Miranda Warnings

After appellant's first confession and before his second confession, appellant had been read his *Miranda* rights three times. The first was during an arraignment hearing before a magistrate, the second was before appellant led officers to the location of the body, and the third was on the videotape before his second confession. This factor clearly weighs in favor of the State.

### Temporal Proximity

Before appellant's second confession, he had been in custody for more than thirteen hours.[14] Appellant had been in custody overnight with time to rest and reflect. *See Dunn,* 951 S.W.2d at 482 (Mansfield, J., concurring) (stating several hours was sufficient time to reflect and to consider the consequences of confessing); *Bell,* 724 S.W.2d at 791 (stating before appellant's second confession, he had been in custody over a day, with time to eat, rest, and reflect); *see also Hankins,* 132 S.W.3d at 390 (stating nine and one-half hours time between appellant's arrest and confession is not so long that it becomes a particularly weighty factor for the State, but it is not so little that it favors appellant). Although somewhat of a close question, this factor tends to favor the State.

### Intervening Circumstances

Unlike the first statement, significant intervening circumstances occurred between the arrest and initial confession on the night of January 15th and the second confession the morning of January 16th. The most significant intervening factor is that appellant appeared before a magistrate. After his arraignment, upon an investigator's request, appellant agreed to show detectives the exact location of the body. Appellant stated he already knew his rights from the night before and from the arraignment, but the investigator repeated them again. Appellant then led detectives to the location of the body and remained on the scene until officers confirmed the location was correct. After confirming the body's location, appellant returned to the Sheriff's office and gave his second statement on videotape. Given the intervening circumstance that appellant was taken before a judge for arraignment, we find this third factor weighs in the State's favor. *See Hankins,* 132 S.W.3d at 390 (stating that the most important intervening circumstance was appellant's arraignment).

### Official Misconduct

As previously stated, the Court of Criminal Appeals has found official misconduct when the arrest: (1) was without probable cause;[15] (2) was calculated to cause surprise, fright, and confusion;[16]

---

14. Appellant was taken into custody at approximately 9:30 p.m. to 10:00 p.m. on January 15, and the videotaped confession began the next day, January 16, at 11:41 a.m.

15. *See Farrah,* 883 S.W.2d at 679 (finding the illegality of the arrest weighed heavily in appellant's favor when officers lacked probable cause to arrest because the only connection between appellant and the offense was possession of the car and his race, and noting,

this was not a situation with some technical error that invalidated the arrest); *Townsley,* 652 S.W.2d at 797–98.

16. *See Duncan,* 639 S.W.2d at 316–18 (finding flagrant misconduct when appellant was taken from her bed at 3:00 a.m. for interrogation purposes and was interrogated until 6:00 a.m. when she signed the confession); *Green,* 615 S.W.2d at 708–09 (finding flagrant misconduct when appellant was roused from his

and (3) was conducted purely in hope that something would turn up.[17] When the official misconduct is flagrantly abusive, the clearest indications of attenuation should be required. *Bell,* 724 S.W.2d at 789.

■ We have already held the trial court committed error in finding there was a valid warrant supported by an affidavit establishing probable cause. The record contains little elaboration on the issue because the State failed to provide sufficient facts to support an affirmative finding of probable cause.[18] In *Bell,* the Court of Criminal Appeals stated official misconduct is flagrant when the police, in making an arrest, rely on factors which are so lacking in indicia of probable cause as to render belief in their existence entirely unreasonable. 724 S.W.2d at 789. In the instant case, although there was misconduct, we find that it was not flagrantly abusive because the factors in making appellant's arrest were not so lacking in indicia of probable cause as to render belief in their existence entirely unreasonable. In *Ussery,* the appellant called the police to a murder scene and brought attention to himself by making inconsistent statements. 651 S.W.2d at 770. The Court of Criminal

Appeals found that although officers may have had reasonable or articulable suspicion that appellant was connected with the commission of the crime, they did not have probable cause to arrest. *Id.* at 770–71. The Court of Criminal Appeals stated that "[w]hile we decline to condemn the officers' conduct as flagrant, the purpose and impropriety of their acts are clear." *Id.* at 771. Like the *Ussery* court, we conclude there was un-excused official misconduct here, but it was not flagrant.

The officers' conduct in arresting appellant was not calculated to cause surprise, fright, or confusion. Although appellant was arrested at night, the other facts of this case are not similar to *Duncan* or *Green.* In *Duncan,* appellant was awakened at 3:00 a.m. for interrogation purposes and was interrogated until 6:00 a.m., when she signed the confession. 639 S.W.2d at 318. In *Green,* appellant was roused from his sleep in the middle of the night by officers pointing shotguns in his direction, then led into the freezing weather with no coat, outer clothing, or shoes. *Green,* 615 S.W.2d at 708–09. In the instant case, investigators called appellant

---

sleep in the middle of the night with officers pointing shotguns in his direction, leading him into the freezing weather with no coat, outer clothing or shoes).

17. *See Beasley,* 674 S.W.2d at 768–69.

18. Based on the evidence introduced at the suppression hearing, the officers may have had information providing them with probable cause to arrest appellant, but that information was not in a probable cause affidavit. Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a particular person has committed or is committing an offense. *Amores,* 816 S.W.2d at 413. In determining whether an officer has probable cause for an arrest, Texas courts apply the totality-of-the-circumstances

analysis. *Tribble v. State,* 792 S.W.2d 280, 284 (Tex.App.-Houston [1st Dist.] 1990, no pet.). In analyzing whether an officer had probable cause to arrest when receiving information from a crime victim or witness, the focus does not appear to be on the validity or accuracy of the information, but on whether the officer was justified in relying on the statement. *Mungia v. State,* 911 S.W.2d 164, 167 (Tex.App.-Corpus Christi 1995, no pet.). Indeed, the modern position is that any person purporting to be a crime victim or witness may be presumed reliable, though the police must remain alert to the existence of any circumstances which would make that presumption inoperative in a particular case. *Id.* (citing W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 3.4(a), p. 719 (West 1987)).

on the telephone and advised him they were looking for him and needed to speak with him. Appellant told the investigators he would call them when he arrived home. When appellant arrived at his house, he called the investigators and said he would wait for them on his front porch. Shortly thereafter, appellant was arrested by Investigator Kinchloe. Unlike *Duncan* and *Green,* this case does not present a situation in which the arrest was calculated to cause surprise, fright, or confusion.

There is no suggestion by appellant or the record that appellant's arrest was conducted by officers in hope that something would just "turn up." In *Beasley,* the court found appellant's arrest was made with "purpose and flagrancy" when he was arrested without probable cause and on the basis of nothing more than a missing person report. 674 S.W.2d at 768. The court found the officers had set out on a patently investigatory mission, and on the basis of nothing more, detained appellant with the apparent hope that "something would turn up." *Id.* at 768–69. In the instant case, nothing in the record suggests appellant was arrested in hope that something would turn up. Appellant was arrested after his wife told investigators that he was responsible for the murder. Officers already had discovered the victim's abandoned car and a shovel they suspected was used to bury the victim's body. Although we do not condone the officers' actions, their conduct was not a flagrant fishing expedition for incriminating statements.

We find the final factor regarding official misconduct weighs in favor of the appellant. However, we also find the official misconduct was not flagrantly abusive.

### Summary

After reviewing all of the factors, we find that before his second confession appellant received repeated *Miranda* warnings, was able to rest and reflect over the course of a night and the following morning on the consequences of a confession, and was arraigned before a judge and apprised of his rights. We hold these facts, of which arraignment is the most important, broke the nexus between the illegal arrest and appellant's second confession. These intervening circumstances attenuated the taint of the illegal arrest on the second confession, rendering it admissible during appellant's trial.

■ Appellant's second confession is essentially the same as his first confession and more detailed. "Since the second confession is more complete with details and it was properly admitted in evidence, the admission of the first confession is not reversible error." *Bell,* 724 S.W.2d at 793 (quoting *Daniel v. State,* 668 S.W.2d 390, 392 (Tex.Crim.App.1984)); *see* Tex.R.App. P. 44.2.

### Conclusion

We conclude, appellant's initial arrest was without a warrant based on probable cause. Accordingly, the first confession was tainted and the trial court erred in admitting the confession during trial. However, intervening circumstances between the illegal arrest and the second confession, including appellant's appearance before a magistrate and his receipt of additional *Miranda* warnings, severed the causal relationship between the illegal arrest and the second confession, rendering it admissible at trial.

We overrule appellant's sole issue and affirm the judgment of the trial court.