Affirmed and Majority and Concurring Opinions filed February 1, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00575-CR

___________________

 

Jerrod Duanya Ferguson AKA Jerry Fuller,
Appellant

 

V.

 

State of Texas, Appellee



 



 

On
Appeal from the 23rd District Court

Brazoria County,
Texas



Trial Court Cause No. 57729

 



 

 

MAJORITY OPINION

A jury found appellant guilty of possession of a
prohibited item in a correctional facility, namely, a cell phone.  The jury
assessed six years’ imprisonment by the Texas Department of Criminal Justice
(“TDCJ”) for the offense.  Appellant, appearing pro se at both the trial
and on appeal, raises nine points of error on appeal.  We affirm.

FACTUAL AND
PROCEDURAL BACKGROUND

Major Calvin Tucker of
the Darrington Unit of the TDCJ testified that on March 14, 2007, he attempted
to conduct a routine search of appellant’s cell and person.  (3 RR 11) 
Appellant’s cell mate was sleeping, but appellant was awake and at the rear of
the cell.  (3 RR 11)  Major Tucker asked appellant to consent to a strip search;
appellant refused.  (3 RR 11)  Major Tucker then asked another TDCJ employee to
open the door to appellant’s cell, which she did.  (3 RR 14)  At this point,
appellant’s cell mate woke up and consented to a strip search, which Major
Tucker conducted.  (3 RR 14)  Appellant then appeared to consent to the search
by taking off his shirt and handing it to Major Tucker, who was standing in the
cell doorway.  (3 RR 15)  Major Tucker searched the shirt and attempted to
return it to appellant.  (3 RR 15)  At that point, appellant tried to shut the
cell door on Major Tucker.  (3 RR 15)  Major Tucker pushed back and stepped
into the cell; appellant responded by punching Major Tucker in the face.  (3 RR
15-16)  Major Tucker struck appellant in response.  Eventually appellant lay
down on the bed, where Major Tucker handcuffed him and walked him to the cell
door.  (3 RR 16)  

            Major Tucker then handed off appellant to two other officers
who took appellant to the infirmary.  (3 RR 17)  One of the TDCJ officials who
escorted appellant to the infirmary was Lieutenant Steven Kelly.  (3 RR 30) 
Lieutenant Kelly testified he took appellant to the infirmary to check for any
injuries, pursuant to policy after a “force incident” occurs.  (3 RR 32)  The
entire medical examination and subsequent search was videotaped.  (3 RR 32) 
The TDCJ requires the video camera remain trained on the inmate the entire
time.  (3 RR 32)  After the medical examination, Lieutenant Kelly also took
still photos of appellant to document any injuries.  (3 RR 33)  

            Lieutenant Kelly next strip searched appellant.  (3 RR
33-34)  To do so, he first searched a “dry cell” next to the infirmary and then
placed appellant in it.  (3 RR 33-34)  A dry cell is an empty room with a cell
door.  It does not have any plumbing or furniture.  (3 RR 34)  Lieutenant Kelly
 noted the actions he took for the video camera, stating that he searched the
cell, but there is no video of the cell because the camera was required to
remain on appellant.  Appellant then consented to a strip search.  (3 RR 35)  Lieutenant
Kelly testified that when appellant removed his shorts and underwear, he saw an
object “go to the floor.”  (3 RR 35)  At the same time, appellant placed an
item in his mouth and swallowed it.  (3 RR 35)  The item was never identified,
but appellant first stated the item was Prozac and later declared the item was
Tylenol.  (3 RR 35)  The video camera did not record the object on the floor because
it fell outside its range.  Lieutenant Kelly testified he examined the object
and found it was a gray sock, knotted on the end.  (3 RR 38-39)  Inside, he
found a cell phone encased in a toilet paper tube.  (3 RR 38)  Lieutenant Kelly
testified he turned over the phone, sock and toilet paper tube to Officer Chris
Cegielski, an investigator at TDCJ.  Officer Cegielski testified that he
examined the items and found no fingerprints on the phone. (3 RR 68)  When he
tried to turn the phone on, the SIM card was missing, so he could not tell if
any calls were made.  (3 RR 67)

            Appellant cross-examined the prosecution witnesses, attempting
to show a culture of corruption within the prison.  He also presented two
inmate witnesses who, it appears, were called to suggest that the cell phone
was planted by corrupt prison officials.  The trial court prevented much of their
testimony upon objections by the prosecution.  Appellant did not testify in his
own defense.

            The jury deliberated, but twice told the trial judge it was
unable to reach a verdict.  After the second time, the trial judge gave the
jury an Allen charge[1] and asked them to continue deliberating.  The jury
returned with a verdict of guilty.  

            During the punishment phase, the prosecution called
additional witnesses.  These witnesses testified that the cell phone was not
the first piece of contraband appellant had possessed in prison.  He had
previously possessed $100 in cash, ten marijuana cigarettes, and another cell
phone.  (4 RR 13, 18, 24)  Appellant cross-examined them, but only asked each
witness if, after the items were confiscated, whether he caused the witness
personally “any other problems.”  Each witness answered no.  The trial judge
asked both parties if they had read and agreed to the punishment phase jury
charge, and each answered yes.  The punishment range for the offense was an
enhanced sentence of between two and twenty years for the offense and up to a
$10,000 fine.  The jury deliberated and sentenced appellant to six years’
imprisonment and no fine.

Appellant chose to appear pro se at trial, but
had appointed standby counsel.  (2 RR 7)  The prosecuting attorney was Special
Prosecutor Terri Holder.  (1 RR)  Appellant also filed his appellate brief pro
se, asserting nine points of error.  (Ant B. 3)  

DISCUSSION

I.                  
 Was Special Prosecutor Terri Holder Illegally Prosecuting
Appellant?

In his first issue, appellant argues Special
Prosecutor Terri Holder did not have authority to prosecute him.  Appellant
filed a Writ of Quo Warranto in the trial court to challenge the legal
authority of Ms. Holder with the trial court.  (Ant B. 1)  He argues his conviction
is illegal because Ms. Holder did not have prosecutorial authority.  (AB 2)  

A.     Standard
of Review

This issue concerns a matter of law, which we review de
novo.  See Lawson v. State, 283 S.W.3d 438, 440 (Tex. App.—Fort
Worth 2009, pet. ref’d) (constitutional questions are reviewed de novo). 


B.        Analysis

Appellant argues that the Texas Constitution allows
only elected district or county attorneys to represent the State in criminal
prosecutions.  He further argues this is a non-delegable duty, except to
appoint an attorney pro tem in the case of conflicts.  (AB 1)  The
record does not contain any evidence Ms. Holder is an attorney pro tem and
appellant does not dispute Ms. Holder’s claim that she is a member of the
Special Prosecution Unit for prison offenses.  (1 RR)  

The Texas Constitution states elected officials are
permitted to prosecute criminal offenses.  See Tex. Const. art. V, § 21. 
Nonetheless, elected district and county officials are permitted to employ
other attorneys to prosecute cases.  Tex. Gov’t Code § 41.02 (West 2010).  The
courts have also determined that “[a] ‘special prosecutor’ is permitted by the
elected district attorney to participate in a particular case to the extent
allowed by the prosecuting attorney, without being required to take the
constitutional oath of office.”  State v. Rosenbaum, 852 S.W.2d 525, 529
(Tex. Crim. App. 1993) (Clinton, J., concurring) (emphasis omitted).  Furthermore,
the Texas legislature has codified the payment of Special Prosecutors to
prosecute crimes on property owned by the TDCJ.  Code Crim. Proc. Ann. art. 104.003
(West 2010).  Finally, the Court of Criminal Appeals has specifically stated
the Special Prosecution Unit has the authority necessary to prosecute inmate
offenses.  Ex parte Jones, 97 S.W.3d 586, 589 (Tex. Crim. App. 2003). 
As a result, we conclude Ms. Holder had the authority necessary to prosecute
appellant.  Appellant’s first point of error is overruled.

II.              
 Were There Fatal Errors in the Indictment?

In his second point of error, appellant argues his
due process rights were violated because the prosecutor did not file a
complaint prior to the grand jury indicting him.  In appellant’s third point of
error, he argues the indictment was flawed because he was indicted under the
name of “Jerry Fuller” but his correct name is “Jerrod Duanya Ferguson.”  (AB 6,
CR 3) Appellant argues in his fourth point of error that the indictment had
fatal flaws because it did not include all necessary elements of an indictment. 
In his fifth point of error, appellant argues the indictment is invalid because
the district court’s number is not listed on its face.

A.     Standard
of Review

We review a trial court’s denial of a motion to quash
an indictment under a bifurcated approach.  See State v. Moff, 154
S.W.3d 599, 601 (Tex. Crim. App. 2004).  To the extent the credibility and demeanor
of witnesses are at issue, we review the trial court’s decision for abuse of
discretion.  Id.  For all other matters related to the form of the
indictment, we review de novo as a matter of law.  Id.

B.      Analysis

1.       Necessity
of a Complaint Prior to a Grand Jury Indictment

In his second point of error, appellant argues the grand
jury indictment against him is fatally flawed because the prosecution failed to
file a complaint prior to receiving a grand jury indictment.  Appellant
submitted a “Motion to Dismiss for Violations of the Fifth and Fourteenth
Amendments of the United States Constitution and Article 1 § 19 of the Texas
Constitution” to the trial court, requesting it quash the indictment.  (CR 26)
The trial court denied appellant’s motion. (CR 28)  Appellant cites authorities
stating that a complaint must be filed in order for the prosecutor to proceed
to trial on the basis of an information.  See Code Crim. Proc. Ann. art.
21.22; Baldauf v. State, 456 S.W.2d 136 (Tex. Crim. App. 1970).  He also
cites authority stating a complaint sometimes must be filed prior to a
magistrate issuing a warrant.  See Code Crim. Proc. Ann. art. 15.04; Weems
v. State, 167 S.W.3d 350 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d). 


A grand jury indictment is different from either an
information or a warrant.  See Code Crim. Proc. Ann. art. 21.  An
indictment is returned by a grand jury after consideration of a charge provided
by the prosecutor.  See id. art. 21.01–02.  The grand jury is obligated
to consider whether the charge is substantially pleaded before the prosecutor
can charge anyone with the crime.  Id. art. 21.04.   An information is a
document filed by the prosecutor with the court to charge a person with a
crime.  Id. art. 21.20.  An information does not require any court or
grand jury review before bringing the defendant to trial, so the prosecutor
must provide some credible reason to bring the charges.  Id. art.
21.22.   Hence, a sworn complaint must be provided to justify an information.  Id.
 

There is no statutory requirement for a prosecutor to
file a complaint before a grand jury issues an indictment.  See id.
art 21. Appellant has cited no other legal authority showing a grand jury must
receive a complaint prior to indicting a defendant.  (AB 5)  As a result, we conclude
appellant’s argument is without merit and his second issue is overruled.  See
Tex. R. App. P. 38.1(i).   

2.       Alleged
Incorrect Name on the Indictment

In his third point of error, appellant argues that
the indictment was fatally flawed because the original was in the name of
“Jerry Fuller” but his name is “Jerrod Duanya Ferguson.”  (AB 6)  Appellant
argues that he gave timely notice of the alleged error in naming to the trial
court.  The trial court ordered an amendment to the indictment.  (CR 3)  The
record does not reflect why the trial court issued this order, but we presume
it was in response to a timely request by appellant.  See Code Crim.
Proc. Ann. art. 26.08 (allowing change of style if defendant informs court of
his true name).  

Most filings in this case have been styled “Jerrod
Duanya Ferguson aka Jerry Fuller.”  At no time did appellant object to the
styling.  Furthermore, appellant acknowledged he uses both names.  In voir
dire, he told the venire panel, “My name is Jerrod Duanya Ferguson.  I was
convicted and sentenced [for his previous crime] under the alias Jerry
Fuller.”  (2 RR 68)  Witnesses referred to appellant as “Jerry Fuller” without
any comment or objection from appellant.   Thus, this court concludes appellant
is known by more than one name.  Under the Texas Code of Criminal Procedure, if
“a person is known by two or more names, it shall be sufficient to state either
name” in the indictment.  § 21.07.  Appellant acknowledged and acquiesced to
the use of the name “Jerry Fuller.”  Further, the trial court issued the order amending
the indictment.  Consequently, the indictment is valid and appellant’s third
point of error is overruled.

3.       Were
Essential Elements Missing from the Indictment?

In his fourth point of error, appellant argues the
indictment is invalid on its face because the name of a complaining witness was
not included in the indictment.  In support of this claim, he cites Abu-Shabaam
v. State, 848 S.W.2d 782 (Tex. App.—Houston [14th Dist.]), vacated 856
S.W.2d 436 (Tex. Crim. App. 1993).  In Abu-Shabaam, this court found an
indictment invalid when the complaining witness listed in the indictment was
named as “N. Tomlinson” but only a “William Tomlinson” testified.  Id. at
785.  This created a fatal variance between the allegations in the indictment
and the proof presented at trial, requiring overturning the verdict.  Id. 
An error in the name of a complaining witness is not the same as the omission
of a complaining witness in the indictment.  

An indictment is statutorily sufficient if it has
nine elements, none of which require inclusion of the name of a complaining
witness.  Code Crim. Proc. Ann. art. 21.02.[2] 
Thus, the indictment is valid without a complaining witness listed.  See id. 
Appellant’s fourth point of error is overruled.  

4.       Was
the Failure of the Indictment to List the Number of the Trial Court Error?

Appellant argues in his fifth point of error that the
trial court did not have jurisdiction over him because the indictment failed to
name the 23rd District Court of Brazoria County as the trial court.  (CR 8) 
Appellant argues this information was necessary under the authority of Greenfield
Energy, Inc. v. Duprey, 252 S.W.3d 721 (Tex. App.—Houston [14th Dist.] 2008,
no pet.).  This authority has no bearing on appellant’s claim, however, because
Greenfield was a civil action where no indictments were filed.  Id.
at 724.  Furthermore, the issue in Greenfield was the trial court’s
personal jurisdiction over corporate entities under minimum contacts analysis,
not an indictment form question.  Id. at 724.  

Appellant does not generally attack the jurisdiction
of the 23rd District Court of Brazoria County, but only claims the trial court
lacks jurisdiction because the indictment did not specifically name the 23rd
District Court.   Appellant’s claim is invalid, however, because the Court of
Criminal Appeals has decided that “when there is more than one district court
in the county, the indictment need not specify the particular court in which it
was presented.”  Roberts v. State, 489 S.W.2d 113, 114–15 (Tex. Crim.
App. 1973).  Brazoria County has more than one district court.  As a result,
the indictment was not flawed by failing to list a specific court on its face
and the trial court had jurisdiction over the proceedings.  Appellant’s fifth
issue is overruled.   

III.           
 Was The Evidence Against Appellant Legally Sufficient?

Appellant argues the evidence was not legally
sufficient to support the conviction in his sixth and eighth points of error. 
Accordingly, we will combine these arguments and respond to them jointly.

A.    Standard
of Review

In a legal sufficiency review, we view all evidence
in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of a crime beyond a
reasonable doubt.  Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim.
App. 2005).  The jury, as the sole judge of the credibility of the witnesses,
is free to believe or disbelieve all or part of a witness’ testimony.  Jones
v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  The jury may
reasonably infer facts from the evidence presented, credit the witnesses it
chooses to, disbelieve any or all of the evidence or testimony proffered, and
weigh the evidence as it sees fit.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).  Reconciliation of conflicts in the evidence is within
the jury’s discretion and such conflicts alone will not call for reversal if
there is enough credible evidence to support a conviction.  Losada v. State,
721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  An appellate court may not reevaluate
the weight and credibility of the evidence produced at trial and in so doing
substitute its judgment for that of the fact finder.  King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000).  Inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406
(Tex. Crim. App. 2000).  We do not engage in a second evaluation of the weight
and credibility of the evidence, but only ensure the jury reached a rational
decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); Harris
v. State, 164 S.W.3d 775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet.
ref’d.).

B.     Analysis

A person commits a crime if he intentionally or
knowingly possesses a cellular telephone while an inmate in a correctional
facility operated by the TDCJ.  See Tex. Penal Code § 38.11(j) (West
2010).

Appellant concedes he is an inmate at a TDCJ
correctional facility.  Appellant argues the evidence against him is legally
insufficient because: (1) the jury received an Allen charge before
reaching a verdict; (2) appellant’s fingerprints were not discovered on the
cellular phone; (3) there was no evidence the cell phone was registered to
either appellant or his “family/friends”; (4) there was no record of any
appellant’s conversations with the phone; (5) the video recording shows
appellant sitting down and standing without any item protruding from his shorts
or falling out.  Even if all of appellant’s contentions are true, we conclude
they do not demonstrate the evidence is legally insufficient.

The jury heard several witnesses.  Major Tucker
testified that appellant made efforts not to be strip searched, including
striking Major Tucker.  (3 RR 15-16)  Lieutenant Kelly testified that he
searched the dry cell prior to admitting appellant to the room and found
nothing in it.  (3 RR 34)  Lieutenant Kelly and another officer testified that
when appellant removed his clothing, a gray sock fell to the floor at the same
time appellant appeared to swallow something.  (3 RR 35-36)  Appellant
initially claimed he swallowed Prozac, but later said he swallowed Tylenol.  (3
RR 36) Lieutenant Kelly searched the sock and found the cell phone inside.  (3
RR 38)  Investigator Cegielski testified there was no SIM Card present in the
cell phone when he received it.  (3 RR 67)  

Viewing the evidence in a light most favorable to the
verdict, we conclude a reasonable jury could have determined appellant
possessed the cell phone.  Salinas v. State, 163 S.W.3d at 737. 
Appellant’s sixth and eighth points of error are overruled.   

IV.            
 Were There Errors in the Jury Charge?

Appellant argues in his seventh point of error that
the trial court failed to give an instruction on the law of presumptions in the
jury charge.  In his ninth point of error, appellant argues the trial court
failed to give general admonishments in the jury charge, including the admonishment
about the presumption of innocence.  We address these issues together.

A.     Standard
of Review

When reviewing claims of jury charge errors, we first
determine whether there was error in the charge.  Barrios v. State, 283
S.W.3d 348, 350 (Tex. Crim. App. 2009).  If there was error and appellant
objected to the error at trial, reversal is required if the error “is
calculated to injure the rights of the defendant,” which has been defined to
mean there is “some harm.”  Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985).  If the error was not objected to, the error requires
reversal only if the error was so egregious and created such harm that the
defendant “has not had a fair and impartial trial.”  Id.

 

 

 

B.      Analysis

1.       Instructions
on the Law of Presumptions

Appellant argues the trial court erred in not giving
an instruction to the jury on the law of presumptions.  (AB 11)  He acknowledges
he did not make any objection at trial about the law of presumptions, so we
will review this point of error under the fundamental error standard.  Id. 
(AB 11)  Appellant was charged with knowingly or intentionally possessing a
cellular phone while an inmate in TDCJ custody.  

There is no mandatory presumption in the charge.  See
Willis v. State, 790 S.W.2d 307, 310 (Tex. Crim. App. 1990) (explaining a
mandatory presumption requires the jury to presume an element or fact of the
case or creates a presumption the defense must rebut).  A permissive
presumption allows, but does not require, the jury to infer an element of the
crime from other facts.  Id.  It is generally deemed constitutional if a
reasonable jury could infer the presumption from facts in evidence.  Id.  


In this case, there were no presumptions given in the
jury instructions.  The jury was required to find each element of the charge
beyond a reasonable doubt.  Thus, there is no need to give instructions on
permissive presumptions because there were none the jury could make.  See
Tex. Penal Code § 2.05(a) (“[W]hen this code or another penal law establishes a
presumption with respect to any fact . . . the court shall charge the jury, in
terms of the presumption[.]”). The trial court did not commit error;
consequently, there is no need for us to analyze the possible harm to the appellant. 
 Appellant’s seventh point of error is overruled.

2.       Did
the Trial Judge Fail to Give Proper Instructions on the Presumption of
Innocence?

Appellant argues the trial judge breached his duty to
sua sponte inform the jury on the law regarding “the presumption of [innocence],
proof beyond a reasonable doubt, unanimity of the verdict, & so forth.” 
(AB 14)  Appellant does not clarify whether he is referring to the trial
court’s duty in the verdict or sentencing jury charge, nor does he point to specific language in the jury charge to support his
claim.  

The trial court has a duty to inform the jury about the
presumption of innocence, proof beyond a reasonable doubt, and requirements of
unanimity of the verdict.  Upon reviewing the jury charge for the guilt–innocence
phase, we conclude the trial court did give proper instructions on all of the
above issues.  

In the punishment stage, the trial court has a duty
to sua sponte instruct the jury about extraneous crimes or bad acts
(“bad acts”).  Tex. Code Crim. Proc. Ann. art. 37.07(3)(a)(1).  Particularly, the
trial judge must instruct the jury that it must believe the evidence of extraneous
bad acts has been shown beyond a reasonable doubt to consider the bad acts in
sentencing.  Id.; id. art. 36.14; Huizar v. State, 12
S.W.3d 479, 484 (Tex. Crim. App. 2000).  

During the punishment phase, the prosecutor solicited
evidence of extraneous bad acts.  In particular, witnesses testified that
appellant had previously possessed cash, marijuana, and another cell phone
while incarcerated.  (4 RR)  Witnesses testified that these items were
prohibited contraband.  Appellant did not cross-examine the witnesses about the
veracity of their claims, nor did he argue he did not possess the items in
closing arguments.  After the witnesses testified, appellant confirmed he read
the proposed jury charge and had no objections.

In the jury charge for the punishment stage, the
trial court did not instruct the jury that they could only consider the bad
acts if they found them to be true beyond a reasonable doubt.[3]  Thus, we conclude
the trial court erred because  it did not give the reasonable doubt instruction
in the punishment charge. See Tex. Code Crim. P. art. 37.07(3)(a)(1);
Tex. Code Crim. P. art. 36.14; Huizar, 12 S.W.3d at 484 (Tex. Crim. App.
2000).

Because the trial court erred, we must perform the
harm analysis of Almanza.  Almanza, 686 S.W.2d at 171.  Appellant
did not object to the omission of the reasonable doubt instruction, so we will
only overturn the trial court’s punishment if the error resulted in egregious
harm.  Id.  Egregiousness is determined by examining the entire jury
charge, the state of evidence, appellant and State’s arguments, and any other
information revealed by the record.  Id.  To find egregious  harm, appellant
must make a showing of actual harm, not just theoretical harm.  See id.
at 174.  

We decided a similar
case in Walton v. State.  2007 WL 706582 (Tex. App.—Houston [14th Dist.]
2007, pet. ref’d.) (mem. op.)  Although without precedential value, we find the
reasoning in the decision persuasive and adopt it here.  In that case, Walton
was found guilty of sexual assault.  Id. at *1.  During the punishment
phase of his trial, the mother of the sexual assault victim testified Walton
hit her, but she never pressed charges.  Id. at *3.  During
cross-examination, Walton never disputed any part of the woman’s story.  Id. 
Nor did Walton object to the jury charge.  Id.  Walton received a
sentence of forty years out of a range of five to ninety-nine years available
to the jury.  Id.  We found there was no egregious error in that case
because the woman’s testimony was never disputed, Walton did not object to the
jury charge at trial, and received a mid-range sentence in the possible range
of sentencing.  Id. at *4.  Thus, Walton could not show actual harm
caused by the jury charge error.  Id.

Appellant’s case bears
many similarities with Walton.  Bad acts were admitted in the
punishment phase, but appellant never challenged the factual basis of the
witness’ testimony.  Appellant affirmatively
approved of the proposed jury charge that did not include an instruction on
reasonable doubt.  Finally, appellant could have received an enhanced
sentence of two to twenty years in prison.  The jury sentenced him to six
years, only four more than the minimum required and fourteen years less than
the maximum.  Appellant has not proven he suffered actual harm due to the error
in the jury instruction.  See Almanza, 686 S.W.2d at 174.  Thus, we conclude
the trial court’s error was not so egregious that the defendant “has not had a
fair and impartial trial.”  Id. at 171.  Appellant’s ninth point of
error is overruled.

CONCLUSION

Having considered and overruled each of appellant’s
nine issues on appeal, we affirm the judgment of the trial court.

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown. (Frost, J., Concurring.)

Publish
— Tex. R. App. P. 47.2(b).









[1] Allen v. U.S., 164
U.S. 492 (1896) (a jury instruction designed to encourage the jury to reach a
verdict after a period of deadlock).  





[2] The elements necessary
are:

1.       Commencing
“in the name and by authority of The State of Texas.”

2.      The
indictment must appear in the district court of the county where the grand jury
was in session.

3.      The
indictment must be an act of the grand jury in the proper county.

4.      The
indictment must contain the name of the accused, or state that his name is
unknown and give a reasonably accurate description of him.

5.      The
indictment must show the offense was committed within the jurisdiction of the
trial court.

6.      The
date of the offense must be prior to the indictment, but not so remote as to be
barred by statutes of limitations.

7.      The
offense must be written in plain language

8.      The
indictment must conclude, “Against the peace and dignity of the State.”

9.      The
foreman of the grand jury must sign the indictment.

Tex. Code of
Crim. Proc. § 21.02.





[3] The relevant portion of
the jury charge reads:

You are further charged that
in fixing the defendant’s punishment, you may take into consideration all of
the evidence submitted to you in the full trial of this case, that is, all the
evidence submitted to you in the trial of the first part of this case wherein
you were called upon to determine the guilt or innocence of the defendant, and
all other evidence admitted to you in the second part of this trial wherein you
are called upon to fix the defendant’s punishment.  And you will be bound by
the charges of the court covering the first and second parts of this trial in
determining what punishment shall be given to the defendant.