Affirmed and Opinion filed May 28, 2009








Affirmed and Opinion filed May 28, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00985-CR

____________

 

RICHARD CISNEROS, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th
District Court 

Harris County, Texas

Trial Court Cause No. 1058305

 



 

O P I N I O N

Appellant
was convicted of possession with the intent to deliver a controlled substance,
namely cocaine, weighing between four and 200 grams and sentenced to 28 years
in prison.  On appeal, appellant raises six issues, challenging (1) the trial
court=s denial of his motion to suppress
evidence seized from his apartment, (2) the factual sufficiency of the
evidence, (3) the admission of his prior felony convictions, and (4) the trial
court=s refusal to grant his request for a
continuance.  We affirm.








I.  BACKGROUND

Appellant
lived in an apartment complex in the Heights area in Houston.  On February 17,
2006, Officer Chris Massey and Sergeants Larry Bronikowski and Arturo Bazan of
the Houston Police Department were conducting surveillance on an unrelated tip
near appellant=s apartment complex.  During their surveillance, Officer Massey observed
appellant engaging in suspicious activity.  More specifically, around 5:30
p.m., Officer Massey testified that he observed appellant making a Aheat run.@[1]  As appellant was walking to his
vehicle to exit the apartment complex a second time, Officer Massey saw a small
brown bag partially protruding from appellant=s pocket.  Officer Massey and
Sergeants Bronikowski and Bazan followed appellant as he drove out of the
complex, onto a highway, and observed appellant commit three traffic
violations:  speeding, changing lanes without signaling, and driving a vehicle
without a front license plate.  Because the three officers were in plain
clothes, Officer Massey called in a request for a local patrol unit to stop
appellant based on the traffic violations observed by the three officers.  Two
patrol officers, Charles Corgery and Thurston Johnson, responded to Officer
Massey=s call and initiated a traffic stop. 
Officer Massey and Sergeants Bronikowski and Bazan followed the patrol officers
and appellant to a nearby gas station where the traffic stop was completed.  








Officer
Thurston testified that he smelled an odor of marijuana in the vehicle when he
approached appellant.  The two patrol officers asked appellant for  his driver=s license and insurance; however,
appellant was unable to produce them.  Around 7:30 p.m., appellant was arrested
and given his Miranda warnings.  The officers then conducted a vehicle
search incident to the arrest and inventoried the vehicle.  In appellant=s vehicle, the officers discovered a
brown bag, similar to the bag previously observed by Officer Massey protruding
from appellant=s pocket, containing 127.9 grams of cocaine including adulterants and
dilutants.  The officers then asked appellant where he lived.  However,
appellant was uncooperative and told the officers that he was homeless.  For
the next five hours, the officers made investigatory efforts to locate
appellant=s residence.  

First,
officers went back to appellant=s apartment complex to search apartment 27, the apartment
which Officer Massey saw appellant enter and exit earlier in the day.  Officer
Massey, at the same time, went to the police station to get a search warrant
for apartment 27.  While drafting the search warrant, Officer Massey learned
that a tenant of apartment 27 had given the other officers consent to search
the apartment.  By this time, six to eight officers were involved in the
investigation, and appellant was still in custody, handcuffed in the back of
Officer Johnson=s patrol unit.  When Massey arrived, the officers searched
apartment 27 and discovered large amounts of cocaine, methamphetamine, and
marijuana.  However, it was discovered that appellant did not reside in apartment
27.








Next,
the officers and appellant went to the apartment of appellant=s sister in North Houston.  Around
10:30 p.m., officers obtained consent to enter and search the apartment. 
However, the officers did not discover any incriminating evidence in the North
Houston apartment.  The officers continued their efforts to locate appellant=s residence.  They stopped near a
bank to discuss their next step and again questioned appellant.[2] 
The officers then searched appellant=s cell phone record of calls and
spoke with his girlfriend.  With this conversation, the officers were able to
identify appellant=s apartment.  He lived in the same apartment complex in the
Heights area where officers previously conducted a search in apartment 27;
however, appellant lived in apartment 36.  On the way to apartment 36, the
officers stopped at a fast food restaurant to eat.  Appellant did not ask for
and was not offered food, water, or a bathroom break.  The officers and
appellant arrived at apartment 36 around 12:30 a.m.  Shortly after arriving,
appellant signed a written consent form authorizing the officers to search
apartment 36.  Appellant told the officers that there were no drugs in the
apartment, only guns.  The officers searched apartment 36 and discovered three
handguns, one rifle, kilo wrappers, a bullet proof vest, $2,243 in cash, three
bongs, and a kilo press.   

Subsequently,
appellant was charged by felony indictment for the cocaine seized from his
vehicle, namely, possession of cocaine weighing between four and 200 grams with
the intent to deliver.[3]  Prior to
trial, appellant filed a motion to suppress the evidence recovered from his
apartment. In his motion, appellant alleged that the items found in his
apartment were inadmissible because (1) his consent was involuntary and (2) the
search of his cell phone leading the officers to his apartment was illegal. 
Appellant elected to take the motion to suppress to trial, and after a
suppression hearing outside the presence of the jury, the trial court denied
the motion.  Appellant was found guilty by the jury, and the trial court
assessed punishment at 28 years in prison. 

On
appeal, appellant challenges (1) the trial court=s denial of his motion to suppress
evidence seized from his apartment, (2) the factual sufficiency of the
evidence, (3) the admission of his prior felony convictions, and (4) the trial
court=s refusal to grant his request for a
continuance.  

II.  MOTION TO SUPPRESS

In his
first issue, appellant contends that the trial court erroneously denied his motion
to suppress evidence seized from apartment 36.  In his motion to suppress,
appellant sought to suppress the following evidence found in the apartment:
three handguns, one rifle, kilo wrappers, a bullet proof vest, $2,243 in cash,
three bongs, and a kilo press.  Appellant challenges the trial court=s suppression ruling on two bases:
(1)  appellant=s written consent to search his apartment was involuntary and (2) the
search of his cell phone leading officers to his apartment was illegal. 








A. 
Standard of Review

We
review a trial court=s ruling on a motion to suppress evidence under a bifurcated
standard of review:  we give almost total deference to the trial court=s ruling on (1) questions of
historical fact, even if the trial court=s determination of those facts was
not based on an evaluation of credibility and demeanor, and (2)
application-of-law-to-fact questions that turn on an evaluation of credibility
and demeanor.  Johnson v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002); Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Turner v. State,
252 S.W.3d 571, 576 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).  However, when the trial court=s rulings do not turn on the
credibility and demeanor of the witnesses, we review de novo a trial
court=s rulings on mixed questions of law
and fact.  Johnson, 68 S.W.3d at 652B53. 

At a
suppression hearing, the trial court is the sole factfinder and may choose to
believe or disbelieve any or all of the witnesses= testimony.  State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000); Weems v. State, 167 S.W.3d 350,
354B55 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).  When, as here, there are
no written findings in the record, we uphold the ruling on any theory of law
applicable to the case and assume that the trial court made implicit findings
of fact in support of its ruling so long as those findings are supported by the
record.  Swain v. State, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); Weems,
167 S.W.3d at 355. 

B. 
Legality of the Cell Phone Search








Appellant
also challenges the legality of the search of his home based upon the alleged
illegal search of his cell phone.  Appellant contends that the cell phone
search was illegal because he had already been arrested and the possession of
cocaine offense was completed.  Still, the officers searched his cell phone
approximately four to five hours after his arrest to locate his residence and
determine whether he had additional drugs in his apartment. Appellant contends
that the State offered not exception to the warrant requirement supporting the
later search of the cell phone eventually leading officers to his house.

1.  Waiver

In
response, the State initially argues that appellant has waived any challenge to
the cell phone search because it was not presented to the trial court below. 
In his written motion to suppress, appellant challenged the search of his
apartment on two bases: the cell phone search was illegal and his consent was
involuntary.  However, appellant did not orally challenge the search of the
cell phone at the suppression hearing; he focused exclusively on the
voluntariness of his consent. The State asserts that because appellant did not
orally argue the legality of the cell phone search at the suppression hearing,
he failed to preserve error on this particular basis.  We must therefore
determine whether appellant=s challenge to the search of the cell phone, specifically
articulated in his motion to suppress, was waived when not argued orally to the
trial court at the suppression hearing. 








The
State relies on a body of well-established caselaw reasoning that a party
waives error when (1) a suppression motion makes global arguments citing
little more than constitutional and statutory provisions and (2) fails to argue
any specific grounds for suppressing evidence at the suppression hearing.  See
Swain, 181 S.W.3d at 365.  Here, appellant specified two grounds for
challenging the search of his apartment in his motion to suppress: the
voluntariness of his consent and the legality of the cell phone search.  Thus,
this case is not controlled by those cases involving an accused merely
asserting Aglobal arguments@ in the motion to suppress.  Furthermore, the Court of
Criminal Appeals has held that Aa motion to suppress will be sufficient to preserve and
allege error where the oral argument covers some, but not all, of the grounds
raised in the motion.  See Eisenhauer v. State, 754 S.W.2d 159, 161
(Tex. Crim. App. 1988), overruled on other grounds, Heitman v. State,
815 S.W.2d 681 (Tex. Crim. App. 1991); see also Larway v. State, No.
14-98-00136-CR, 1999 WL 996991, at *2 (Tex. App.CHouston [14th Dist.] Nov. 4, 1999,
pet. ref=d) (per curiam) (relying on Eisenhauer
for the proposition that a motion to suppress will be sufficient to
preserve error where the oral argument covers some, and not necessarily all, of
the specific grounds raised in the motion).   

Additionally,
appellant=s counsel initiated the suppression hearing by asking the court if he
could Aplease have our hearing on the motion
to suppress.@  After the motion was denied, appellant objected to the evidence
thereafter during trial based on Ahis motion to suppress@ previously filed.  Because appellant=s motion to suppress did not present
global arguments, but rather articulated two specific grounds, including the
cell phone search, and he objected to the evidence based on his motion to
suppress, error has been preserved. 

2.  Search
of Appellant=s Cell Phone

Assuming
without deciding whether the admission of the complained-of evidence was error,
we find its admission to be harmless.  Because the search of the cell phone
implicates the right to be free of unreasonable searches and seizures under the
United States and Texas constitutions, we conduct a constitutional harm
analysis.  See Hernandez v. State, 60 S.W.3d 106, 108 (Tex. Crim.
App. 2001).  Thus, we must reverse unless we determine beyond a reasonable
doubt that the error did not contribute to the conviction.  Tex. R. App. P.
44.2(a); McQuarters v. State, 58 S.W.3d 250, 258 (Tex. App.CFort Worth 2001, pet. ref=d).








While
the cell phone search ultimately led the officers to find a bullet proof vest,
guns, drug paraphernalia, and money in appellant=s apartment, the search did not
reveal the existence of additional contraband.  The record reflects that
appellant was not charged with unlawfully possessing the guns or other items
found in his apartment.  Although not articulated in the State=s briefing, the record reflects that
the State offered the items found in appellant home as evidence of appellant=s intent to deliver the contraband
found in his vehicle; however, appellant does not challenge the evidence of his
intent to deliver.  Furthermore, the testimony of Officer Massey and the
chemist wholly incriminated appellant in the instant crime.  Both testified
that the quantity of the cocaine found in appellant=s vehicle was substantial and clearly
an amount to distribute.  As discussed in the section of this opinion relating
to the factual sufficiency of the evidence to support guilt, there was a great
deal of direct and circumstantial evidence obtained from sources other than the
search in question that linked appellant to the crime, particularly the
evidence of appellant making Aheat runs@ and Officer Massey=s observing a brown bag protruding
from appellant=s pocket similar to the brown bag found in appellant=s vehicle containing the cocaine. 
Accordingly, we find the admission of the complained-of evidence to be
harmless.  See Tex. R. App. P. 44.2(a).  

C. 
Voluntariness of Appellant=s Consent

Appellant
first contends that the trial court erroneously denied his motion to suppress
the evidence found in his apartment because he did not voluntarily consent to
the search.  Under both the United States and the Texas constitutions, a
warrantless search of a residence is illegal unless the entry falls within one
of the specifically-defined and well-established exceptions to the warrant
requirement.  Johnson v. State, 226 S.W.3d 439, 443 (Tex. Crim. App.
2007); Brimage v. State, 918 S.W.2d 466, 480 (Tex. Crim. App. 1994). 
One well-recognized exception is when a voluntary consent to search has been
given.  Gutierrez v. State, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007).









 Whether
consent was voluntary involves a question of fact that is determined from the
totality of the circumstances.  Id. at 686B87; Johnson, 226 S.W.3d at
443.  The federal constitution requires the State to prove voluntary consent by
a preponderance of the evidence, but the Texas Constitution requires proof by
clear and convincing evidence.  Montanez v. State, 195 S.W.3d 101, 105
(Tex. Crim. App. 2006); Carmouche, 10 S.W.3d at 331.  We consider the
following factors in determining voluntariness:  the defendant=s age, education, and intelligence;
the length of detention; any constitutional advice given to the defendant; the
repetitiveness of questioning; and the use of physical punishment.    See
Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).  We also
consider whether (1) appellant was in custody, handcuffed, or had been arrested
at gunpoint;  Miranda warnings were given; and  the defendant had the
option to refuse to consent.  See Flores v. State, 172 S.W.3d 742, 749B50 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
In examining the totality of the circumstances surrounding a consent to search,
the trial court should consider the circumstances leading up to the search, the
reaction of the accused to pressure, and any other factor deemed relevant.  Reasor,
12 S.W.3d at 818.  

Appellant
contends that his consent was involuntary because: (1) he was under arrest; (2)
multiple officers converged on the scene during his arrest and while he
remained in custody thereafter; (3) officers subjected him to repetitive
questioning at different locations; (4) he chose to remain silent and was
uncooperative throughout the time in which he was in custody; (5) he was in
custody for approximately five and a half hours; (6) he was not given food,
water, or a bathroom break while in custody; and (7) the officers made physical
threats against him.  Giving his account, appellant testified that the officers
became frustrated with him hours after they were unsuccessful in locating his
apartment.  According to appellant, Sergeant Moreira threatened to Aknock [appellant=s] teeth down his throat,@ and Sergeant Bronikowski asked
appellant if he was Aready for a long ride@ and tightened appellant=s handcuffs, causing his hands to
numb.  Appellant testified that after riding around in a patrol unit in
handcuffs for five and a half hours and being threatened by the officers, he
just Awanted to go to jail@ and felt that he had no choice but
to sign the consent form.           








The
State strongly disputes appellant=s account of the events leading up to
the search. At the suppression hearing, the State produced evidence that
appellant was lawfully arrested for possession of the contraband found in his
vehicle; appellant neither disputes the legality of the traffic stop nor the
search of his vehicle.  Upon his arrest, appellant was given his Miranda
warnings.  Officer Massey further testified that appellant first gave oral
consent to search apartment 36 and then he voluntarily signed the written
consent form.  Officer Massey testified that appellant read the consent form
before he signed it and appeared to understand that he was giving officers his
consent to search the apartment.  Although appellant was not given food, water,
or a bathroom break while in custody, he undisputedly never asked for either of
the three.  Officer Massey testified that if appellant had asked for food,
water, or a bathroom break, he would have complied with the request. 
Furthermore, Officers Massey and Johnson and Sergeant Bronikowski testified
that appellant was never threatened or coerced in any fashion by the officers. 

Although
some of the factors we use in determining voluntariness weigh in appellant=s favor, the factors, overall, weigh
in the State=s favor.  The fact that appellant was handcuffed and under arrest at the
time he gave consent is partially neutralized by giving appellant his Miranda
warnings.  See Manzi v. State, 56 S.W.3d 710, 717 (Tex. App.CHouston [14th Dist.] 2001), aff=d, 88 S.W.3d 240 (Tex. Crim. App. 2002) (Aone affirmative step taken by the
police to reduce the effect of [being handcuffed] was to advise him of his
legal rights@); see also Johnson, 68 S.W.3d at 653 (consent is not rendered
involuntary merely because the accused is under arrest); Williams v. State,
937 S.W.2d 23, 28B29 (Tex. App.CHouston [1st Dist.] 1996, pet. ref=d) (same).  Additionally, nothing in
the record shows appellant is of low intelligence or physically disabled. 
Appellant, 30 years old at the time of his arrest, was able to communicate
efficiently with officers, read the consent form before signing it, and
appeared to understand that he was giving the officers consent to search the
apartment.  Appellant even told the officers specifically what items they would
find in the apartment when he gave consent.  These factors weigh in favor of
the State.  








Appellant
insists that two officers, including Sergeant Bronikowski, threatened him;
however, Sergeant Bronikowski denied making any threats towards appellant.
Officers  Massey and Johnson also testified that appellant was not threatened
by any of the officers.  At the suppression hearing, the trial court determined
the facts and was free to accept or reject any or all of the evidence
presented.  Brooks v. State, 76 S.W.3d 426, 430 (Tex. App.CHouston [14th Dist.] 2002, no pet.). 
Appellant=s testimony clearly conflicts with the testimony of the officers.  When
viewing the Atotality of the circumstances,@ the trial court was free to believe
each officer=s testimony and disbelieve appellant=s testimony.  See Martinez
v. State, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000) (although disputed by
the defendant, A[t]estimony by law enforcement officers that no coercion was
involved in obtaining the consent is also evidence of the consent=s voluntary nature@).  

The
record also reflects that appellant was uncooperative; however, one Awho refuses to cooperate with the
police on the grounds that he is constitutionally permitted to do so, may
change his mind at some later time and decide to voluntarily cooperate.@  See Manzi, 56 S.W.3d at
718.  Moreover, appellant was advised of his constitutional rights, including
his right not to speak with officers.  See Lackey v. State, 638 S.W.2d
439, 451 (Tex. Crim. App. 1982) (advisement that one has the right to remain
silent can be Aa very important factor indicating that a subsequent consent to search is
voluntary@).  The fact that appellant gave written consent weighs in favor of the
State as well.  See id. at 452 (reasoning that written consent Atends to show that [the defendant=s] consent was definite and
unequivocal@).  

The
testimony of Sergeant Bronikowski and Officers Massey and Johnson, combined
with appellant=s signature on the consent form and other factors discussed above,
provide clear and convincing evidence that the consent was freely and
voluntarily given.  Giving deference to the trial court=s resolution of factual conflicts, we
conclude that the trial court did not abuse its discretion in denying appellant=s motion to suppress on the
voluntariness ground.  We
overrule appellant=s first issue.

III.  FACTUAL SUFFICIENCY








In appellant=s second issue, he
contends that the evidence is factually insufficient to show that he knowingly
possessed the contraband found in his vehicle.[4] 
In a factual sufficiency review, we review all the evidence in a neutral light,
favoring neither party.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006).  We then ask (1) whether the evidence supporting the conviction,
although legally sufficient, is nevertheless so weak that the jury=s verdict seems
clearly wrong and manifestly unjust, or (2) whether, considering the
conflicting evidence, the jury=s verdict is against the great weight and
preponderance of the evidence.  Id. at 414B17; Marshall v.
State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).  It is not enough that
we declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury=s resolution of that conflict.  Watson,
204 S.W.3d at 417.  If an appellate court determines that the evidence is
factually insufficient, it must explain in exactly what way it perceives the
conflicting evidence greatly to preponderate against conviction.  Id. at
414B17; Rivera-Reyes
v. State, 252 S.W.3d 781, 784 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  The reviewing court=s evaluation
should not intrude upon the factfinder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  Johnson
v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).  

For the offense possession of a controlled substance with
intent to deliver, the State must prove that the defendant: (1) exercised care,
custody, control, or management over the controlled substance; (2) intended to
deliver the controlled substance to another; and (3) knew the substance in his
possession was a controlled substance.  See Tex. Health & Safety
Code '' 481.002(38),
481.112(a), (f).  These elements may be proven by circumstantial evidence.  Poindexter
v. State, 153 S.W.3d 402, 405B06 (Tex. Crim.
App. 2005); Moreno v. State, 195 S.W.3d 321, 325 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d). 








Appellant argues that the evidence is factually
insufficient on the element of possession, i.e., exercising care, custody,
control, or management over the contraband, because he was not the exclusive
owner of the vehicle in which the contraband was found and the other co-owner
had been using the vehicle earlier that day before releasing it to appellant. 
However, regardless of actual ownership of the vehicle, appellant=s right to use it
is undisputed.  The jury could have disbelieved appellant=s testimony that
another person co-owned the vehicle and that this co-owner left the contraband
in the vehicle proceeding appellant=s use of the
vehicle.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Cuong
Quoc Ly v. State, 273 S.W.3d 778, 783 (Tex. App.CHouston [14th
Dist.] 2008, pet. ref=d).  Furthermore, even if the jury did
believe that appellant shared ownership of the vehicle, it did not have to
believe appellant=s claim that he did not know the
contraband was in the vehicle, especially in light of the evidence produced by
the State of appellant=s previously carrying a  brown bag similar
to the one in which the contraband was discovered.

Appellant further argues that the verdict is undermined by
the absence of additional possible Aaffirmative links@ showing that he
knowingly possessed the cocaine.  When an accused in not in exclusive
possession of a place where the controlled substance is found, the State must
affirmatively link the accused to the contraband.    See Evans v. State,
202 S.W.3d 158, 161B62 (Tex. Crim. App. 2006); Poindexter,
153 S.W.3d at 406.  The following factors are evidence of affirmative links
between a defendant and contraband: (1) the defendant=s presence when a
search in conducted; (2) whether the contraband was in plain view; (3) how
close and accessible the drugs were to the defendant; (4) whether the defendant
was under the influence of narcotics when arrested; (5) the defendant=s possession of
other contraband or narcotics when arrested; (6) any incriminating statements
the defendant made when arrested; (7) whether the defendant made furtive
gestures or attempted to flee; (8) an odor of contraband; (9) the presence of
drug paraphernalia; (10) the defendant=s ownership or
right to possess the place where the drugs were found; (11) whether the place
where the drugs were found was enclosed; (12) the defendant=s possession of a
large amount of cash; (13) the presence of a large quantity of contraband; and
(14) any conduct by the defendant indicating a consciousness of guilt.  See
Olivarez v. State, 171 S.W.3d 283, 291 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  Notwithstanding the preceding laundry list of possible
links, there is no set formula of facts that necessitates a finding of an
affirmative link sufficient to support an inference of knowing possession. Hyett
v. State, 58 S.W.3d 826, 830 (Tex. App.CHouston [14th
Dist.] 2001, pet. ref=d).  Affirmative links are established by
the totality of the circumstances.  Id.      








Many of the evidentiary factors used to establish
affirmative links between an accused and the contraband are present in this
case.  Appellant owned the vehicle in which the contraband was found.  He was
driving the vehicle alone and was the only person in possession of the vehicle
at the time the contraband was found.  Additionally, the contraband was
conveniently accessible to appellant and in close proximity to him.  An odor of
marijuana emanated from the vehicle, and appellant was uncooperative in the
subsequent investigation by officers.  Moreover, the amount of contraband
present was greater than the typical quantity possessed for a user=s personal use. 
Officer Massey also previously observed appellant with a brown bag identical to
the brown bag in which the contraband was found. Appellant was observed making Aheat runs@ in the vehicle
prior to his arrest.  Additionally, officers found drug paraphernalia and a
large amount of cash in appellant=s apartment.  

Although the State=s evidence is
disputed by appellant, a decision is not manifestly unjust merely because the
trier of fact resolved conflicting views of the evidence in favor of the
State.  See Cuong Quoc Ly, 273 S.W.3d at 783.  The jury
presumably weighed all the evidence, made credibility assessments, considered
alternative explanations, and concluded that appellant knowingly possessed the
cocaine with the intent to deliver.  After reviewing the evidence impartially,
we find the evidence is factually sufficient to support the jury=s verdict.

VI.  ADMISSION OF PRIOR CONVICTIONS

In
issues three through five, appellant complains that the trial court erroneously
admitted evidence of his: (1) November 16, 1992 conviction for unauthorized use
of a motor vehicle; (2) November 16, 1992 conviction for auto theft; and (3)
February 3, 1993 conviction for aggravated assault.  Citing to Theus v.
State, appellant contends that his prior convictions were remote and had
little probative value.  845 S.W.2d 874 (Tex. Crim. App. 1992).  In response,
the State contends that appellant has failed to preserve error for appellate
review.  We agree.








The
record reflects that, prior to trial, the State gave appellant notice that it
intended to use appellant=s prior convictions for impeachment purposes.  Appellant
later filed a Theus motion requesting that the trial court allow
appellant to testify free of impeachment from the 1992 and 1993 convictions. 
The trial court conducted a brief hearing on appellant=s Theus motion and ruled that
appellant=s convictions were admissible.  Thereafter, appellant admitted on direct
examination to being previously convicted of unauthorized use of a motor
vehicle, auto theft, and aggravated assault and discussed the punishments he
had received for those convictions.

As a
general rule, a complaint regarding improperly-admitted evidence is waived if
the same evidence is introduced by the defendant himself.  See Rogers v.
State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993).  An exception to this
general rule applies when the accused introduces the evidence in an effort to
meet, rebut, destroy, deny, or explain evidence that already has been
improperly admitted.  Id.  This exception, however, does not apply if a
defendant testifies about his prior convictions on direct examination in an
effort to preempt questions anticipated by the State during cross-examination. 
Wootton v. State, 132 S.W.3d 80, 84 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d); Johnson v. State, 981
S.W.2d 759, 761 (Tex. App.CHouston [1st Dist.] 1998, pet. ref=d).  Here, the record indicates that
appellant testified about his prior convictions on direct examination in an
effort to preempt anticipated questions by the State on cross-examination.[5] 
When appellant testified to the prior convictions, no evidence of his priors
had been admitted.  By testifying first on direct examination, appellant waived
any error on the trial court=s ruling regarding admissibility of the convictions.  See
Wootton, 132 S.W.3d at 84.  Accordingly, we overrule appellant=s third, fourth, and fifth issues.      








V.  REQUEST FOR CONTINUANCE

In his sixth issue, appellant complains that the trial
court erroneously denied his motion for continuance to secure Amanda Phillips
as an expert witness.  Appellant unsuccessfully attempted to subpoena Phillips,
another HPD chemist who tested the cocaine seized in apartment 27.  Appellant
anticipated that Phillips would testify that the cocaine found in appellant=s vehicle came
from a different source than the cocaine found in apartment 27 because they
contained different adulterants.  Appellant insists that this testimony would
have eliminated one of the affirmative-links factors.[6]

We review a trial court=s ruling on a
motion for continuance for abuse of discretion.  Vasquez v. State, 67
S.W.3d 229, 240 (Tex. Crim. App. 2002).  To establish an abuse of discretion,
appellant must show that he was actually prejudiced by the denial of his
motion.  Id.  Furthermore, when a defendant=s motion for
continuance is based on an absent witness, it is necessary to show that (1) the
defendant has exercised diligence to procure the witness=s attendance; (2)
the witness is not absent by the procurement or consent of the defense; (3) the
motion is not made for delay; and (4) the facts expected to be proved by the
witness.  Tex. Code Crim. Proc. art. 29.06; Harrison v. State,
187 S.W.3d 429, 434 (Tex. Crim. App. 2005).  A motion for continuance must show
on its face the materiality of the absent testimony.  Harrison, 187
S.W.3d at 434.








Here, appellant has not shown the materiality or relevance
of Phillips= testimony.  Appellant speculated that Phillips would
have testified that the cocaine found in his vehicle came from a different
source than the cocaine found in apartment 27.  However, appellant was never
connected to apartment 27, and in fact, another individual who occupied that
apartment was ultimately held responsible for that contraband.  Evidence that
the cocaine found in appellant=s vehicle came from a different source
than the cocaine found in apartment 27 would have had little, if any, relevance
to the instant offense in which appellant was charged and convicted. 
Accordingly, appellant has failed to show how he was prejudiced without
Phillips= testimony. We
find that the trial court did not abuse its discretion in denying appellant=s motion for
continuance.  We overrule appellant=s sixth issue.

Having overruled all of appellant=s issues, we
affirm the trial court=s judgment.

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Panel consists of
Chief Justice Hedges, Justices Anderson, and Senior Justice Hudson.*

Publish C Tex. R. App. P. 47.2(b).

 

 

 

 

 

 

* Senior Justice
J. Harvey Hudson sitting by assignment.









[1]  Officer Massey testified that appellant left the
apartment complex in his vehicle, made a few erratic turns while driving on the
street, returned to the apartment complex, and then left the complex for a
second time.  Officer Massey testified that, based on his training, it was his
opinion that appellant was performing a Aheat
run,@ which is a driver=s
effort to determine whether or not he is under surveillance. 





[2]  Appellant testified that by this time in the
investigation, the officers were increasingly frustrated because they were
unsuccessful in locating his apartment.  According to appellant, two officers
then threatened him: Sergeant Moeira threatened to Aknock [his] teeth down [his] throat,@ and Sergeant Bronikowski asked appellant if he was Aready for a long ride@ and tightened his handcuffs.  Sergeant Bronikowski and Officers Massey
and Johnson testified that appellant was never threatened by any of the
officers during the investigation.  





[3]  Appellant was not charged for the contraband found
in apartment 27.





[4]  Because a factual sufficiency review begins with the
presumption that the evidence supporting the jury=s verdict is legally sufficient, and because appellant challenges only
the factual sufficiency of the evidence, appellant effectively concedes the
evidence is legally sufficient to sustain his conviction.  See Santellan
v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis v. State,
922 S.W.2d 126, 134 (Tex. Crim. App. 1996); Newby v. State, 252 S.W.3d
431, 435 n.1 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).





[5]  After the trial court ruled that appellant=s prior convictions were admissible, defense counsel
stated that Ain light of the court=s ruling, it=s the defense=s
[sic] plan to have the defendant admit them . . . to take the sting out , . . .
[but do we] not waive error.@ 





[6]  The State argues that this issue is not preserved
for appellate review because appellant failed to raise the issue in a motion
for new trial.  In Taylor v. State, the Court of Criminal appeals held
that A[t]he only means of preserving error in the overruling
of a motion for continuance due to an absent witness is a motion for new trial.@  612 S.W.2d 566, 569 (Tex. Crim. App. 1981). 
However, in Ho v. State, this Court found that error was preserved
without the filing of a motion for new trial.  171 S.W.3d 295, 300 n.2 (Tex.
App.CHouston [14th Dist.] 2005, pet. ref=d).  Citing to appellate procedure rule 21.2, the Ho
court reasoned that Abecause all facts necessary to address the motion for
continuance are in the record, appellant was not required to complain of the
denial of the motion for continuance in his motion for new trial in order to
preserve the issue for review.@  Id.   Similar
to Ho, the facts necessary in this case to address appellant=s motion for continuance complaint are in the record. 
Accordingly, we address the merits of appellant=s complaint.