

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00438-CR

———————————————————

GERALD MONTGOMERY, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1492285D

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In three issues, appellant Gerald Montgomery challenges the sufficiency of the evidence to support his conviction for the offense of sexual assault, the denial of his motion to suppress evidence, and the inclusion of a charge instruction on the lesser offense of sexual assault. We will affirm the trial court's judgment.

## II. BACKGROUND

### A. Factual Background

The complainant in this case, E.F., testified at trial. On March 16, 2017, E.F. was living in a group home in Fort Worth and would walk twice daily for exercise. During her morning walk on March 16, 2017, Montgomery, a person unknown to E.F., called to her and said that he wanted to speak to her. E.F. and Montgomery discussed drugs, and E.F. agreed to return later if possible.

E.F. met with Montgomery that same morning, and they eventually smoked methamphetamine. Montgomery expressed his interest in E.F., and she told him that she did not want to have sex with him. Montgomery went in and out of the bathroom several times, and when he last exited the bathroom, he placed E.F. in a headlock, and put a chemical- or gasoline-laden rag in her mouth and over her face. E.F. struggled and attempted to pull away while Montgomery said, "Breathe it in." E.F. was attempting to not breathe due to her concerns that "this was a do or die kind of situation" and that Montgomery was wanting her to breathe in so that she would

2

either die or pass out. E.F.'s body went numb. Montgomery laid E.F. down, put a condom on his penis, pulled down E.F.'s pants, and placed his penis into E.F.'s vagina. Before he "finished," Montgomery commented, "This is not working for me," and he returned to the bathroom. During this interlude, E.F. began to regain the feeling in her legs and realized that Montgomery was mixing chemicals again or "doing something." E.F. testified that she was worried and realized that he was "going to come back and finish me off . . . . So either I was supposed to be passed out and [let] him finish that way[,] or I was supposed to be dead and let him finish that way." While Montgomery was distracted in the bathroom, E.F. was able to get up and escape.

E.F. approached a neighbor at the corner, told her that she had been sexually assaulted, and used her phone to call 911. After police arrived, E.F. rode in the police car and directed police to the house where she had been sexually assaulted. Police found Montgomery hiding in a bedroom closet inside the house. E.F. testified that she did not consent to sex with Montgomery and identified Montgomery as the person who sexually assaulted her.

A penile swab obtained from Montgomery on March 16, 2017, was tested and showed a mixture originating from and including the DNA profiles of E.F. and Montgomery. Gasoline was identified on a blanket that had been submitted for testing.

3

**B.    Procedural Background**

By indictment, the State charged Montgomery with committing the offense of aggravated sexual assault against E.F. and alleged that during the commission of the offense, he used or exhibited a deadly weapon, in this case a cloth containing gasoline or fuel, that in the manner of its use or intended use was capable of causing death or serious bodily injury.  Tex. Penal Code. Ann. § 22.021.  During the charge conference, and over Montgomery's objection, the trial court granted the State's request to include an instruction in its charge on the lesser offense of sexual assault.[1]  *Id.* § 22.011; *McGahey v. State*, 744 S.W.2d 695, 696 (Tex. App.—Fort Worth 1988, pet. ref'd).  The jury found Montgomery guilty of sexual assault and assessed his punishment at forty years' confinement.

### III.  DISCUSSION

**A.    Motion to Suppress Evidence**

For ease of discussion, we first address Montgomery's second issue in which he complains that the trial court erred in denying his motion to suppress the penile swab collected from him.  Montgomery specifically contends that his rights under the U.S. and Texas constitutions and article 18.01 of the Texas Code of Criminal Procedure

---

[1]In support of its requested instruction on sexual assault, the State noted that the testimony had raised a question regarding whether the inhalation of gasoline can be a voluntary act and contended that an instruction on the lesser offense of sexual assault, thereby omitting the deadly weapon component required for the offense of aggravated sexual assault, was proper.

were violated because the affidavit supporting the request for a search warrant did not request authority to obtain a penile swab and only requested buccal swabs. *See* Tex. Code Crim. Proc. Ann. art. 18.01 (search warrant). The search warrant directed that buccal and penile swabs of Montgomery's DNA be obtained and submitted for scientific analysis.

### 1. Standard of Review

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). A defendant seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to produce some evidence that the government conducted a warrantless search or seizure that he has standing to contest. *State v. Martinez*, 569 S.W.3d 621, 623 (Tex. Crim. App. 2019) (quoting *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986), *disavowed in part on other grounds by Handy v. State*, 189 S.W.3d 296, 299 n.2 (Tex. Crim. App. 2006)); *Handy*, 189 S.W.3d at 298–99; *see, e.g.*, *Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S. Ct. 2556, 2561 (1980). Once the defendant does so, the burden shifts to the State to prove either that the search or seizure was conducted pursuant to a warrant or, if warrantless, was otherwise reasonable. *Martinez*, 569 S.W.3d at 623–24 (quoting *Russell*, 717 S.W.2d at 9); *Amador v. State*, 221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007). If the State produces evidence of a warrant, the burden of proof shifts back to the defendant to show the warrant's invalidity. *Martinez*, 569 S.W.3d at 623 (quoting *Russell*, 717 S.W.2d at 9–10).

Whether a search is reasonable is a question of law that we review de novo, measuring reasonableness by examining the totality of the circumstances. *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). In the process, we must balance the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* at 63.

When reviewing a magistrate's determination of probable cause to issue a search warrant under the Fourth Amendment or Texas Code of Criminal Procedure article 18.01, we apply the deferential standard of review the United States Supreme Court articulated in *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983); *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the probable-cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen*, 143 S.W.3d at 811; *see also State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011); *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

In assessing the sufficiency of an affidavit for an arrest or a search warrant, the reviewing court is limited to the affidavit's four corners. *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992). The reviewing court should interpret the affidavit in a commonsense and realistic manner, recognizing that the magistrate could draw

6

reasonable inferences. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006); *see Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007); *Davis v. State*, 202 S.W.3d 149, 155–58 (Tex. Crim. App. 2006) (discussing the extent to which inferences may be reasonably inferred from an affidavit).

A warrant must be sufficiently particular to satisfy the Fourth Amendment. *See Bonds v. State*, 403 S.W.3d 867, 874–75 (Tex. Crim. App. 2013). A warrant is sufficiently particular if it enables the officer to locate the property and distinguish it from other places in the community. *Id.* at 875. The particularity requirement is related to the probable-cause requirement in that it enables the magistrate to determine whether probable cause exists for the requested search. *Id.*

When the State justifies a search or arrest on the basis of a warrant, it must produce the warrant and supporting affidavit to the trial court if the defendant challenges the search or arrest's validity. *Etheridge v. State*, 903 S.W.2d 1, 19 (Tex. Crim. App. 1994); *Weems v. State*, 167 S.W.3d 350, 356 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see Handy*, 189 S.W.3d at 298 (search warrant). This procedure allows the trial court to review the documents and determine whether probable cause exists and whether the accused's rights have been protected. *Etheridge*, 903 S.W.2d at 19; *Garrett v. State*, 791 S.W.2d 137, 140 (Tex. Crim. App. 1990); *Weems*, 167 S.W.3d at 356; *see Handy*, 189 S.W.3d at 298–99.

7

## 2.    Analysis

Montgomery contends "the penile swab evidence was illegally obtained" because the supporting affidavit did not request a penile swab and consequently did not establish "probable cause for the magistrate to authorize such a search" in violation of his Fourth Amendment rights. He also asserts that the magistrate failed "to specifically list items of property that are to be searched" in contravention of article 18.01's requirement. *See* Tex. Code Crim. Proc. Ann. art. 18.01(d). We disagree with these contentions.

Article 18.01(c) specifies,

> A search warrant may not be issued under Article 18.02(10) unless the sworn affidavit required by Subsection (b) sets forth sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

Tex. Crim. Proc. Code Ann. art. 18.01(c).

Fort Worth Police Detective Emelia Howard prepared an affidavit in support of the requested search warrant. Howard's affidavit specified that police had responded to E.F.'s report that Montgomery, who E.F. had identified by name, had sexually assaulted her—by force and without her consent—by penetrating her vagina with his condom-covered penis prior to E.F.'s escape. E.F. and officers proceeded to the Fort Worth residence that E.F. had identified as the location where the offense

8

had occurred. When officers arrived at the residence, the person who answered the door advised that "the girl" may not be clothed and stated that a girl had been present earlier. After being granted permission to enter the residence, officers found Montgomery hiding in a bedroom closet. Based on these and other facts recited in the affidavit, including those related to the force used during the commission of the offense and the use of an alleged deadly weapon, Howard expressed her belief and reason to believe "that probable cause exists for the BUCCAL DNA swab [sic] of Gerald Montgomery for the offense of SEXUAL ASSAULT," stated that she had reason to believe and did believe that Montgomery had committed the offense of sexual assault, and requested that the magistrate order that "Montgomery . . . submit to the taking of his DNA via BUCCAL swabs" and be transported "to an appropriate facility to obtain DNA via BUCCAL swabs."

Howard's affidavit sets forth sufficient facts and circumstances to permit the magistrate to determine the existence of probable cause to believe that the offense of sexual assault had been committed, that Montgomery's DNA constituted evidence that he committed the sexual assault, and that the DNA was located on Montgomery, the person to be searched. *See id.* art. 18.01(c). Examining the four corners of the affidavit, interpreting the affidavit in a commonsense and realistic manner, recognizing that the magistrate could draw reasonable inferences, and deferring to the magistrate's determination of probable cause, we conclude the affidavit satisfied the requirements of article 18.01(c) and authorized the magistrate to issue the search

9

warrant to permit collection of Montgomery's DNA for scientific testing by means of buccal swabs, penile swabs, or both. *See Gates*, 462 U.S. at 236, 103 S. Ct. at 2331; *Jones*, 833 S.W.2d at 123; *Davis*, 202 S.W.3d at 154; *Hedspeth v. State*, 249 S.W.3d 732, 736–37 (Tex. App.—Austin 2008, pet. ref'd); *see also Ontiveros v. State*, 240 S.W.3d 369, 372 (Tex. App.—Austin 2007, pet. ref'd) (concluding that warrantless swabbing of appellant's penis to obtain DNA evidence that was at risk of destruction was, under the circumstances, a reasonable search under the Fourth Amendment); *Cantu v. State*, No. 05-07-01625-CR, 2009 WL 1479412, at *2 (Tex. App.—Dallas 2009, no pet.) (not designated for publication) (concluding that affidavit requesting only collection of hair samples authorized "magistrate's issuance of search warrant for collection of buccal swabs" and that trial court did not err in denying motion to suppress the buccal swabs).

Montgomery also claims that the trial court's denial of his motion to suppress the penile-swab evidence violated article 18.01's mandate restricting the issuance of a search warrant to items enumerated under that provision. *See* Tex. Code. Crim. Proc. Ann. art. 18.01(d). Article 18.01(d) provides in part, "Only the specifically described property or items set forth in a search warrant issued under Subdivision (10) of Article 18.02 of this code or property, items or contraband enumerated in Subdivisions (1) through (9) or in Subdivision (12) of Article 18.02 of this code may be seized." Tex. Crim. Proc. Code Ann. art. 18.01(d). Article 18.02(a)(10), the only relevant subsection for the purpose of considering Montgomery's complaint, specifies in part that a

10

search warrant may be issued to search for and seize property or items constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense. Tex. Crim. Proc. Code Ann. art. 18.02(a)(10). Montgomery asserts that under these provisions, the failure to specify penal swabs as an item of property to be searched rendered them not subject to seizure. However, the item of evidence to be seized was Montgomery's DNA, and that evidence was specified in conformity with Articles 18.01(d) and 18.02(a)(10). We conclude that the search warrant was sufficiently particular to satisfy the Fourth Amendment and Articles 18.01 and 18.02. *See* Tex. Code Crim. Proc. Ann. art. 18.01–02; *see Bonds*, 403 S.W.3d at 874–75. Because the trial court did not err in denying Montgomery's motion to suppress the penile swab containing DNA evidence, we overrule his second issue.

## B.    Sufficiency of the Evidence

We next address Montgomery's first issue in which he asserts that the evidence is insufficient to support his conviction for sexual assault because E.F. was intoxicated and suffered from mental and physical disorders affecting her memory and perception, thereby rendering her testimony "completely incredible and objectively unreliable," and because there was no physical evidence demonstrating that "[E.F.'s] sexual organ was penetrated without her consent."

11

### 1. Standard of Review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved

12

any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

To determine whether the State has met its *Jackson* burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Jenkins*, 493 S.W.3d at 599. The "law as authorized by the indictment" means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599. We must scrutinize circumstantial evidence of intent as we do other elements of an offense. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim.

13

App. 2009). But when a record supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

### 2. Applicable Law and Analysis

A person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent.[2] Tex. Penal Code Ann. § 22.011(a)(1)(A). A sexual assault is without consent if the actor compels the other person to submit or participate by the use of physical force, violence or coercion. Tex. Penal Code Ann. § 22.011(b)(1).

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

---

[2]Because they are not relevant to our analysis in this case, we have omitted the other means by which the offense of sexual assault may be committed.

14

### a. *Witness Credibility*

Montgomery contends at length that the evidence is legally insufficient to support his conviction because E.F.'s "testimony was completely incredible and objectively unreliable."[3] Montgomery provides no authority in support of this contention. Instead, he recites at length the many reasons why E.F.'s testimony should not be believed and points to evidence regarding drug use, injury, and medical and mental health conditions.

As we have noted, the weighing of evidence and the evaluation of witness credibility is the function of the factfinder. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see Martines v. State*, 371 S.W.3d 232, 242 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (recognizing that factfinder is permitted to disbelieve a witness's recantation and believe her original statement). In convicting Montgomery, the jury determined E.F. to be a credible witness and believed her testimony or resolved any conflicts in the testimony. When viewed in the light most favorable to the verdict, the jury's

---

[3]The trial court held a competency hearing, found E.F. competent to testify and, having determined that no evidence of insanity had been presented, denied Montgomery's suggestion that E.F. had been insane at the time of the alleged event.

15

necessary inferences are reasonable based on the evidence's cumulative force. *Murray*, 457 S.W.3d at 448.

### b. *Physical Evidence*

Montgomery also asserts that there was no credible physical evidence that he sexually assaulted E.F. to support the jury's guilty verdict. In support of this assertion, Montgomery directs us to the testimony of Melissa Cahill, the sexual assault nurse examiner who examined E.F., and her statement that she did not note any trauma regarding E.F.'s genitals. However, Cahill also testified that the societal concept that injury associated with sexual assault will be found is not entirely true nor is it the rule, and she explained that it is not uncommon to find no vaginal injury for a patient who presents as a sexual assault complainant.

Montgomery asserts that there was no credible evidence that he sexually assaulted E.F. nor any evidence from which the jury could reasonably infer that he sexually assaulted E.F. A sexual assault complainant's uncorroborated testimony is sufficient to support a conviction for sexual assault if the complainant informed any person, other than the defendant, within one year after the date on which the offense is alleged to have occurred. Tex. Code Crim. Proc. Ann. art. 38.07(a). A sexual assault complainant's testimony that she did not consent to engaging in sexual intercourse with the defendant is also sufficient, by itself, to establish a lack of consent. *Wilson v. State*, 473 S.W.3d 889, 899 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd)

16

In this case, E.F. notified police that she had been sexually assaulted on the same date on which the offense occurred. The jury heard E.F.'s testimony that Montgomery had lured her into a bedroom, placed her in a headlock, held a gasoline-laden rag over her face that incapacitated her, and forced his penis into E.F.'s vagina without her consent. This testimony, without more, was sufficient to support the jury's finding that Montgomery sexually assaulted E.F.

Having viewed all the evidence in the light most favorable to the verdict, a rational factfinder could have found the essential elements of the offense of sexual assault beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. We overrule Montgomery's first issue.

## C. Lesser-Included Offense Instruction on Sexual Assault

In his third issue, Montgomery complains that the trial court erred when it instructed the jury on the lesser offense of sexual assault. In this case, although Montgomery was charged by indictment for the offense of aggravated sexual assault, the State—not Montgomery[4]—requested that the trial court instruct the jury on sexual assault.

---

[4]When a defendant requests that the trial court instruct the jury on a lesser-included offense, we analyze two steps to determine whether he was entitled to the instruction: (1) Are the elements of the lesser-included offense included within the proof necessary to establish the charged offense's elements? (2) Is there evidence in the record from which a jury could find the defendant guilty of only the lesser-included offense? *State v. Meru*, 414 S.W.3d 159, 161 (Tex. Crim. App. 2013); *Hall v. State*, 225 S.W.3d 524, 528, 535–36 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993). When examining a defendant's

The trial court is required to give the jury a written charge "setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14. In *Grey v. State*, the court of criminal appeals explained that "the State is entitled to pursue the charged offense and, therefore, is entitled to receive a response from the jury on whether the defendant is guilty of the charged offense." 298 S.W.3d 644, 649–50 (Tex. Crim. App. 2009). "It is the State . . . that chooses what offense is to be charged." *Id.* at 650. The State's charging choices, then, become part of the law applicable to the case. *In re State ex rel. Weeks*, 391 S.W.3d 117, 123 (Tex. Crim. App. 2013).

With regard to offenses other than the charged offenses, courts have held that the State's power to choose what offense to pursue means that the State need not prove that the defendant was guilty only of a lesser-included offense in order to obtain submission of the instructions of the lesser-included offense. *See Grey*, 298 S.W.3d at 650 (holding that the State is not bound by the second prong of the *Royster-Rousseau* test). The State could pursue the charged offense alone, or the State could also obtain instructions on a lesser-included offense, or the State could abandon the charged offense altogether in favor of prosecuting the lesser-included offense. *Id.*

Because sexual assault is a lesser-included offense of aggravated sexual assault, the trial court did not err when it granted the State's request and instructed the jury on the offense of sexual assault. *See McGahey*, 744 S.W.2d at 696 ("[S]exual assault is a

entitlement to the lesser-included instruction, the second step is conditional: we reach it only if the requested lesser offense qualifies as a lesser-included offense. *Meru*, 414 S.W.3d at 164.

18

lesser included offense of aggravated sexual assault."). We overrule Montgomery's third issue.

## IV. CONCLUSION

Having overruled Montgomery's three issues, we affirm the judgment of the trial court.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 29, 2019